**Albert GARZA, Appellant,**

v.

**Norman CARLSON, and Joseph S. Petrovsky, Warden, Appellees.**

No. 88–2595.

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1989.

Decided June 12, 1989.

Rehearing and Rehearing En Banc Denied Aug. 7, 1989.

---

Albert Garza, pro se.

David C. Jones, for appellee.

Before ARNOLD, BOWMAN, and MAGILL, Circuit Judges.

ARNOLD, Circuit Judge.

This case stems from a religious fast undertaken by Albert Garza while he was imprisoned at the United States Medical Center for Federal Prisoners (MCFP) in Springfield, Missouri. The substance of Garza's *Bivens*-type complaint is that prison officials erroneously classified him as a "hunger striker," punished him for fasting by keeping him in administrative segregation, and threatened to subject him to intrusive and unnecessary medical treatment. The District Court[1] granted summary judgment in favor of the defendants on the ground of qualified immunity. We affirm.

Garza, Leonard Peltier, and Robert Wilson (also known as Standing Deer) filed the instant complaint, with assistance of counsel, on February 5, 1985. They alleged that they began fasting for religious purposes in April 1984 while imprisoned at the federal penitentiary in Marion, Illinois. Peltier and Wilson are Native Americans who claimed adherence to the practices of the Lakota (Sioux) Nation. Garza fasted in accordance with his interpretation of principles of Sephardic Judaism. The plaintiffs alleged that after several weeks of fasting, they were transferred to MCFP on May 24, 1984.

Garza, the only plaintiff who is a party to this appeal, alleged that he was taken to MCFP for the purpose of force-feeding, and was placed in punitive segregation upon his arrival there. He stated that his fast had ended on September 26, 1984, but that he had remained in segregation and was therefore unable to pray with a quorum of ten Jewish men (a "minyan") as required by Jewish law. The complaint named Norman Carlson, Director of the Federal Bureau of Prisons, and Joseph Petrovsky, Warden of MCFP, as defendants, and sought injunctive relief and $1 million in damages from each defendant. The plaintiffs also filed a motion for a temporary restraining order to prevent prison officials from transferring them back to Marion in retaliation for asserting their religious rights.

The District Court denied the motion for a temporary restraining order, upon the parties' stipulation that the plaintiffs would not be transferred without court approval. The defendants then filed 132 pages of affidavits, records, and other exhibits describing in detail the treatment of the plaintiffs after their arrival at MCFP. According to these documents, the plaintiffs were kept in administrative detention because they were high security risks. The doc-

---

1. The Hon. William R. Collinson, Senior United States District Judge for the Western District of Missouri.

uments indicated that the plaintiffs had been given periodic reviews after being classified for segregated confinement. Also included was the affidavit of Jack Smith, the case manager for the three prisoners. Smith stated that Garza had been denied contact with other inmates because he was a maximum-custody prisoner sentenced to life imprisonment for killing a bank president during a robbery. Smith also stated that precautions were warranted because Garza once escaped from Marion and wounded a deputy sheriff before being recaptured.

MCFP chaplain Alvin Worthley stated that Garza's meals were prepared in the MCFP kosher kitchen, and the prisoner had been authorized to meet periodically with a rabbi from Springfield. Attached to Worthley's affidavit was a document signed by Garza and dated June 24, 1984, acknowledging receipt of various religious articles for use in worship in his quarters.

While the case was pending, Garza undertook a new fast on March 8, 1985. He then filed a motion to proceed pro se, stating that the primary issue in the case was the right to die as a result of a religious fast. He maintained that he did not wish to involve his attorney, who was also Jewish, in acts that could lead to death. In a pro se motion for injunctive relief, Garza claimed that he was being pressured daily to submit to force-feeding and that he had been subjected to forced medical attention. He indicated that prison officials had threatened to take his vital signs and to analyze his urine and blood. These acts, he claimed, would violate the purity and continuity of his fast. He then renounced his earlier intention to fast to death, and stated that medical attention was an unnecessary prelude to force-feeding.

The District Court issued a show-cause order and directed the defendants to seek its permission before giving Garza forced treatment. On June 13, 1985, the Court denied Garza's motion for injunctive relief, stating that nothing in the pleadings showed that monitoring of Garza's health jeopardized the sanctity of his religion. The defendants were directed to seek permission from the Court before forcibly taking blood or urine, and before force-feeding. Garza did not file an interlocutory appeal from the order denying injunctive relief. He later ended his fast.

On July 3, 1986, Peltier and Wilson voluntarily dismissed their complaint. Subsequently, with the Court's permission, prison officials transferred Garza to the general population in the federal penitentiary at Lewisburg, Pennsylvania. The Court then granted Garza's motion for appointment of counsel. Garza's appointed counsel served interrogatories on Petrovsky and Carlson, and deposed both men.

On September 27, 1988, the District Court granted the defendants' motion for summary judgment, noting that under the Supreme Court's clarification of prisoners' First Amendment rights in *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), the defendants had shown a legitimate penological basis for limiting Garza's access to communal worship. The Court further observed that treatment of Garza in accordance with regulations governing hunger strikers did not violate any of his rights under the Constitution. Garza filed this appeal pro se.

■ We agree with the District Court that the MCFP policy prohibiting Garza from worship in a minyan was reasonably related to institutional security concerns. When constitutionally required procedures are followed, courts ordinarily will not second-guess the decision of prison administrators that segregation of a prisoner is necessary to preserve security. See, *e.g., Little v. Norris*, 787 F.2d 1241, 1244 (8th Cir. 1986). We note that prison officials assisted Garza in adhering to other tenets of his faith, so that alternative means of exercising his rights remained open. See *Estate of Shabazz*, 482 U.S. at 351–52, 107 S.Ct. at 2405–06 (although there could be no substitute for weekly Jumu'ah service commanded by the Koran, Court considered other religious practices still open to Muslim inmates). Moreover, Garza suggested no ready alternative to segregation that would have fully accommodated the particular security concerns of MCFP officials. See *id.*

at 352–53, 107 S.Ct. at 2406–07; *Turner v. Safley,* 482 U.S. 78, 90–91, 107 S.Ct. 2254, 2262–63, 96 L.Ed.2d 64 (1987).

Records filed in the District Court show, and Garza does not deny, that he appeared before the MCFP unit team and was classified for administrative detention upon arrival, and that he was given a review each month thereafter. Thus, Garza has failed to state facts indicating a denial of due process. There is also insufficient factual support for Garza's contention that he was segregated in retaliation for his exercise of First Amendment rights; the mere allegation of retaliatory motive is insufficient to defeat qualified immunity for officials whose acts would be protected absent the improper motive, see *Myers v. Morris,* 810 F.2d 1437, 1453 (8th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).

As the District Court noted, federal prison regulations provide treatment for "hunger strikers," but do not address those who are fasting for religious purposes. Garza did not state how labeling him as a hunger striker harmed him. Nor did Garza contend he was force-fed at MCFP. In any event, preservation of prisoners' health is certainly a legitimate objective, and prison officials may take reasonable steps to accomplish this goal. Garza's rights under the Constitution were not violated by the threat of receiving involuntary nourishment. Finally, we reject Garza's contention that the "spirit" of the Constitution requires the effective assistance of counsel in a civil case. See *Watson v. Moss,* 619 F.2d 775, 776 (8th Cir.1980) (per curiam).

We are not called upon to assess the sincerity or correctness of Garza's interpretation of the requirements of his religion. Rather, we are guided by the rule that the right of free exercise of religion within a prison setting is not absolute. Under these circumstances, we will not interfere with the difficult and sensitive task of prison authorities in regulating the conduct of prisoners who are thought to be dangerous.

Accordingly, the order of the District Court is affirmed.