Guy McEACHIN, Plaintiff–Appellant,

v.

Michael MCGUINNIS, Superintendent,
W.E. Wilcox, Acting Dep. Supt. of Se-
curity, Southport, J. Irizarry, Food
Service Administrator, Defendants–
Appellees.

Docket No. 02–0117.

United States Court of Appeals,
Second Circuit.

Submitted: Nov. 24, 2003.

Decided: Feb. 5, 2004.

Guy McEachin, pro se plaintiff-appellant, Upstate Correctional Facility, Malone, NY.

Before: CALABRESI, B.D. PARKER, and RAGGI, Circuit Judges.

CALABRESI, Circuit Judge.

In January 2002, *pro se* plaintiff-appellant Guy McEachin ("McEachin" or "plaintiff"), then an inmate at the Southport Correctional Facility in Pine City, New York ("Southport"), filed suit against various Southport officials in the United States District Court for the Western District of New York. In his complaint, which was accompanied by a motion to proceed *in forma pauperis* ("IFP"), McEachin claimed that the defendants, Superintendent Michael McGuinnis ("McGuinnis"), Deputy Superintendent of Security W.E. Wilcox ("Wilcox"), and Food Service Administrator J. Irizarry ("Irizarry") (collectively, "defendants"), infringed plaintiff's rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution, in violation of 42 U.S.C. § 1983.

The district court (Larimer, *C.J.*) dismissed McEachin's complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B), which provide for the judicial screening of civil actions filed by prisoners against governmental entities or their officers, and for the dismissal of claims that are "frivolous, malicious, or fail[ ] to state a claim upon which relief may be granted." *See id.* § 1915 A(b)(1). We affirm the dismissal of McEachin's Eighth and Fourteenth Amendment claims, but reverse the lower court's ruling with respect to the plaintiff's claim that defendants violated his First Amendment right to religious free exercise, and remand for further proceedings.

I.  Background

McEachin's complaint and accompanying documents can be read to allege the following facts. After sunset on December 4, 2001, in the Southport dining facility, McEachin, who is Muslim, was engaged in prayer (*salat* ) upon breaking his daily Ramadan fast. A Correctional Officer named Sheremeta ordered him to return his food

tray and cup. When McEachin did not respond, Sheremeta issued a Tier II[1] misbehavior report based on McEachin's failure to obey his order. McEachin contends that the instruction was deliberately issued while he was engaged in prayer and that Sheremeta knew McEachin's religious beliefs prohibited his responding to the instruction while praying.

As a result, pending a disciplinary hearing, the plaintiff was subjected to a weeklong restricted diet of "loaf." McEachin complained to each of the defendants that this diet violated his religious beliefs, which required him to break his Ramadan fast each day with properly blessed (Halal) food. He claims that the defendants' failure to suspend the punitive diet (1) was a denial of his due process rights under the Fourteenth Amendment, because applicable regulations permit the imposition of the "loaf" diet only when a Tier III report is filed; (2) constituted cruel and unusual punishment in violation of the Eighth Amendment because it caused plaintiff severe stomach pain and a three-pound weight loss; and (3) infringed his First Amendment right to the free exercise of his religion by depriving him, for one week, of Halal meals with which to break his fast during the Muslim holy month of Ramadan.[2]

The district court granted the plaintiff permission to proceed IFP, but dismissed his complaint on the grounds that McEachin failed to state a claim upon which relief could be granted. *See McEachin v. McGinnis*, No. 02–CV–6005CJS(Fe) (W.D.N.Y. Feb. 12, 2002) ("*McEachin*"). In disposing of his Eighth Amendment claim of cruel and unusual punishment, the court concluded that McEachin had established neither that the deprivation imposed by the restrictive diet was of constitutional magnitude, nor that the defendants acted "maliciously and sadistically to cause harm." *McEachin*, at 4 (quoting, *inter alia, Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir.1993)). Finding no allegation that the "loaf" diet was nutritionally inadequate, posed an imminent health risk, or physically injured McEach-

---

1. Under regulations codified in the Official Compilation of Codes, Rules, and Regulations of the State of New York, inmates in New York correctional facilities are subject to three types of disciplinary hearings for violating prison rules. *See* 7 N.Y.C.R.R. §§ 270.2, 270.3. Tier I hearings address the least serious offenses, which can be punished by loss of privileges such as recreation. *See* 7 N.Y.C.R.R. § 252.5. Tier II hearings are held to address more serious infractions, for which inmates are subject to up to 30 days of confinement in a Special Housing Unit (SHU). *See* 7 N.Y.C.R.R. § 253.7. Tier III hearings involve the most serious violations and may result in SHU confinement for the remaining time an inmate has to serve, and forfeiture of "good time" credits. *See* 7 N.Y.C.R.R. § 254.7.

2. Although McEachin's complaint alleges only constitutional violations, it may also support a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).

It is well-established that " 'the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.' " *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir.1997) (quoting *Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir.1988) (en banc)); *see also Newman v. Silver*, 713 F.2d 14, 15 n. 1 (2d Cir.1983) ("[F]ederal pleading ... is by statement of claim, not by legal theories."); *Brown v. City of Oneonta*, 235 F.3d 769, 783 & n. 4 (Calabresi, J., dissenting from denial of rehearing en banc) (same).

in, the court held that the circumstances warranted the deference usually accorded to prison officials who are charged with preserving "internal order and discipline" and "maintain[ing] institutional security." *See McEachin*, at 4–5 (quoting *Bell v. Wolfish*, 441 U.S. 520, 524, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

With respect to McEachin's due process claim, the court noted that under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) and *Frazier v. Coughlin*, 81 F.3d 313 (2d Cir.1996) (per curiam), a plaintiff, to demonstrate entitlement to relief, must allege "that the restricted diet was 'an atypical and significant hardship' and that the state, by regulation or statute, granted him a 'protected liberty interest in remaining free from' being placed on the restricted diet." *McEachin*, at 6 (quoting, *inter alia, Frazier*, 81 F.3d at 317). Regardless of whether state law created such a liberty interest, the district court found no "atypical and significant" hardship sufficient to implicate McEachin's due process rights. *Id.*

The district court also dismissed McEachin's First Amendment claim. Emphasizing the " 'great deference' . . . afforded to prison officials who are charged with the 'difficult responsibility' of maintaining order in prisons," *id.* at 6–7 (quoting *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir.1989)), the court characterized McEachin's complaint as alleging a *de minimis* burden on his religion, rather than a burden of constitutional magnitude, *see id.* at 7. "Plaintiff does not allege a routine or blanket practice of interfering with his religious practices and thus the imposition of seven days restricted diet on this one occasion does not implicate constitutional concerns," the district court concluded. *Id.*

On April 12, 2002, the district court (Siragusa, *J.*) granted McEachin permission to file a late Notice of Appeal, which he did. Subsequently, McEachin requested appointment of counsel and permission to proceed IFP. On October 2, 2002, this Court granted his motion for IFP status, but declined to appoint counsel. The defendants, who were not served with and did not file an answer to plaintiff's complaint, informed the court that they would neither submit a brief nor participate in the oral argument of this appeal.

## II. Discussion

■ We review *de novo* a district court's dismissal of complaints under 28 U.S.C. §§ 1915A and 1915(e)(2)(B). *See Larkin v. Savage*, 318 F.3d 138, 139 (2d. Cir.2003) (per curiam). The settled rule is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 148 (2d Cir.2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Further, when the plaintiff proceeds *pro se*, as in this case, a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations. *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir.2001). We have frequently reiterated that "*[s]ua sponte* dismissal of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court." *Moorish Sci. Temple of Am., Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir.1982) (citing cases); *see also Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir.1990) (per curiam) ("*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis either in law or fact. Where a colorable claim is made out, dismissal is im-

proper prior to service of process and the defendants' answer." (citations and internal quotation marks omitted)).

■ Our reluctance to dismiss these complaints at such an early stage of the proceedings stems in part from the limited legal knowledge and resources available to *pro se* plaintiffs, which may hamper their ability to articulate potentially valid claims in legally cognizable language. *See Mawhinney v. Henderson*, 542 F.2d 1, 3–4 (2d Cir.1976). We have also noted the difficulties attendant to appellate proceedings where the defendant has not answered the plaintiff's allegations, *see Lewis v. New York*, 547 F.2d 4, 5–6 (2d Cir.1976), and the waste of judicial resources that results when remand for fact development proves necessary, *see id.* at 6 ("Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts."); *see also Ron v. Wilkinson*, 565 F.2d 1254, 1258 (2d Cir.1977) (listing these factors). Therefore, "[w]e must reverse a district court's dismissal pursuant to § 1915A whenever a liberal reading of the complaint gives any indication that a valid claim might be stated." *Larkin*, 318 F.3d at 139. The issue at this stage "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998).

We agree with the court below, substantially for the reasons it gave, that McEachin's complaint fails to state cognizable Eighth Amendment or due process claims. We therefore AFFIRM the judgment with respect to these claims. But, since McEachin's allegations may implicate serious First Amendment concerns, we hold that his religious free exercise claim was improperly dismissed by the district court.

## A. First Amendment Claim

■ When McEachin's complaint is liberally construed, two First Amendment concerns arise. First, McEachin asserts that the seven-day restrictive diet imposed upon him as discipline by the defendants impinged upon his observance of Ramadan by depriving him of properly blessed food with which to break his daily fast. In addition, McEachin alleges that this discipline was itself a product of religious discrimination by a corrections officer who intentionally ordered McEachin to return his tray and cup during McEachin's prayer, knowing that the plaintiff's beliefs would not permit him to respond to the command before he had finished making *salat*.[3] If these allegations are true, an unconstitutional burden may have been placed on McEachin's free exercise rights. Dismissing McEachin's complaint without requiring an answer from defendants, or permitting further discovery to determine, for example, whether denying McEachin properly blessed food at the close of his daily Ramadan fast significantly impeded his religious observance, makes it impossible to evaluate the validity of his First Amendment claim.

Our founding principles require that courts resist the dangerous temptation to try to judge the significance of particular devotional obligations to an observant practitioner of faith. For, "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). Courts have

---

**3.** Although McEachin does not name the guard as a defendant, further inquiry into whether this *pro se* plaintiff was, indeed, challenging this action should have been made before his complaint was dismissed in its entirety.

long puzzled over how best to maintain the delicate balance between, on the one hand, preserving legitimate governmental needs to legislate, regulate, and maintain order, and, on the other, protecting the right of individuals to practice their faith unfettered by the state's definition of what constitutes a legitimate religious imperative.

In cases like this one, a court must determine when an impediment to a religious practice is significant enough to warrant judicial intervention. But it must do this without passing judgment on "the centrality of different religious practices," which is a misguided enterprise that the Supreme Court has called "akin to the unacceptable business of evaluating the relative merits of differing religious claims." *Employment Div. v. Smith,* 494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (internal quotation marks omitted).

In keeping with this reluctance to measure the devotional import of certain religious practices, at least one circuit has held that a plaintiff need not show that a challenged government action placed a "substantial burden" on his religious beliefs in order to establish a free exercise violation. Establishing a lower threshold of harm, the Third Circuit named two prerequisites for according First Amendment protection to religious beliefs. It stated that "[a] court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things." *DeHart v. Horn,* 227 F.3d 47, 51 (3d Cir.2000) (en banc); *see also Ford v. McGinnis,* 352 F.3d 582,

592–93 (2d Cir.2003) (declining to decide whether the substantial burden test applies to free exercise claims, but observing that "[a]pplying the substantial burden test requires courts to distinguish important from unimportant religious beliefs, a task for which … courts are particularly ill-suited," because of "the danger that courts will make conclusory judgments about the unimportance of the religious practice to the adherent");[4] *Tenafly Eruv Ass'n v. Borough of Tenafly,* 309 F.3d 144, 170 (3d Cir.2002) (explicitly rejecting the substantial burden analysis as violating the precept, articulated in *Smith,* 494 U.S. at 887, 110 S.Ct. 1595, that "courts must not presume to determine the place of a particular belief in a religion").

Even those courts that have adhered to a "substantial burden" requirement in considering the free exercise claims of prison inmates have suggested that demonstrating such a burden is not a particularly onerous task. For instance, in *Levitan v. Ashcroft,* 281 F.3d 1313 (D.C.Cir.2002), a case in which Catholic inmates challenged a rule that prevented them from taking communion in the form of wine as well as bread, the District of Columbia Circuit identified three factors to be considered in evaluating whether a "law or regulation imposes a substantial, as opposed to inconsequential burden on the litigant's religious practice," *id.* at 1320:(1) whether "the litigant's beliefs [are] sincere and the practices at issue [are] of a religious nature," (2) whether "[t]he challenged rule … burden[s] a central tenet or important practice of the litigant's reli-

---

4. Our circuit has considered the question of what constitutes a "substantial burden" on religious free exercise, in the course of interpreting the Religious Freedom Restoration Act of 1993 ("RFRA"), which required the application of strict scrutiny to government policies that imposed a "substantial burden" on religious beliefs. *See* Pub.L. No. 103–141, 107 STAT. 1488 (codified at 42 U.S.C. §§ 2000bb *et seq.*), *invalidated by City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). In *Jolly v. Coughlin,* 76 F.3d 468, 477 (2d Cir.1996), we defined a substantial burden as a situation where "the state 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.' "

gion," and (3) "whether the litigants' beliefs find any support in the religion to which they subscribe, or whether the litigants are merely relying on a self-serving view of religious practice." *Id.* at 1320–21. The court ruled that a religious practice did not have to be mandated by a religion to be significant to the observance of that faith. *Id.* at 1319 (holding that "[a] requirement that a religious practice be mandatory to warrant First Amendment protection finds no support in the cases of the Supreme Court or of this court").[5] We recently reached the same conclusion, holding that a burdened practice need not be mandated by the adherent's religion in order to sustain a prisoner's free exercise claim. *See Ford,* 352 F.3d at 593.

We hold today that the district court improperly dismissed McEachin's complaint. The complaint, when viewed in the light most favorable to the plaintiff, alleges that the defendants significantly interfered with McEachin's religious beliefs. Since we so hold, we need not, at this stage, consider whether the plaintiff must demonstrate that the burden on his beliefs was "substantial" in order to state a constitutional claim.[6] It is nevertheless worth noting that courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights. This principle was established in our circuit at least as early as 1975. *See Ford,* 352 F.3d at 597 (holding that prisoners have a "clearly established" right "to a diet consistent with [their] religious scruples"); *Bass v. Coughlin,* 976 F.2d 98, 99 (2d Cir.1992) (per curiam) (reaffirming *Kahane v. Carlson,* 527 F.2d 492, 495 (2d Cir.1975) (finding that Orthodox Jewish inmate had right to provision of kosher meals)).[7]

**5.** For other applications of the substantial burden requirement in the prison religious free exercise context, see, for example, *Canell v. Lightner,* 143 F.3d 1210 (9th Cir.1998) (holding that corrections officer's mock-preaching and espousal of religious views did not constitute a substantial burden on inmate's free exercise of religion), and *Weir v. Nix,* 114 F.3d 817 (8th Cir.1997) (holding that prison officials did not place a "substantial burden" on fundamentalist, separatist inmate's free exercise rights by failing to provide a spiritual advisor who shared inmate's separatist beliefs).

**6.** Rejecting the substantial burden test would not mean that every possible restriction on religious practices is a violation. There may be inconveniences so trivial that they are most properly ignored. In this respect, this area of the law is no different from many others in which the time-honored maxim *"de minimis non curat lex"* applies. Having said that, we wish to be clear that our assertion that there are some burdens so minor that they do not amount to a violation should not be taken as an invitation to impose a substantial burden test by indirection. *But cf. Ford,* 352 F.3d at 591 (describing prison officials' argument that denying an inmate one religious feast meal "is not a 'substantial bur-den'-or, in other words, is a 'de minimis burden'-on [plaintiff's] religious exercise").

**7.** *See also, e.g., DeHart,* 227 F.3d 47 (finding that Buddhist plaintiff whose request for a vegetarian diet was denied because vegetarianism was not an absolute requirement of Buddhism had stated a free exercise claim, and remanding for further factual findings regarding the existence of countervailing penological interests); *Love v. Reed,* 216 F.3d 682 (8th Cir.2000) (holding that denial of inmate's request for bread and peanut butter so that he could prepare his Sunday meals in his cell on Saturday—thereby avoiding preparing food, or benefitting from the preparation of food by others, on the Sabbath—violated prisoner's free exercise rights); *Makin v. Colo. Dep't of Corr.,* 183 F.3d 1205 (10th Cir.1999) (holding that prison officials' failure to accommodate inmate's meal requirements during Ramadan violated his free exercise rights); *Ashelman v. Wawrzaszek,* 111 F.3d 674, 677 (9th Cir.1997) (holding that prison's policy of supplying Orthodox Jewish inmates with one frozen kosher dinner supplemented with nonkosher vegetarian or nonpork meals violated prisoners' free exercise rights) ("We recognize[ ] that requiring a believer to defile himself by doing something that is completely

■ Our cases and those of other circuits suggest that the First Amendment protects inmates' free exercise rights even when the infringement results from the imposition of legitimate disciplinary measures. For example, we reversed a district court's grant of summary judgment to the defendants in *Young v. Coughlin*, 866 F.2d 567 (2d Cir.1989), where the plaintiff-inmate was prevented from attending Ramadan religious activities because of his placement in a limited privilege program and his subsequent confinement in punitive "keeplock." In *Young*, we required the prison officials to "justify their restriction of appellant's free exercise rights," since "[i]t . . . was error to assume that prison officials were justified in limiting appellant's free exercise rights simply because Young was in disciplinary confinement." *Id.* at 570 (citing *LaReau v. MacDougall*, 473 F.2d 974, 979 n. 9 (2d Cir.1972)); *see also Ford*, 352 F.3d at 597 ("[W]e also have found it well established that a prisoner's free exercise right to participate in religious services is not extinguished by his or her confinement in special housing or keeplock." (citing *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir.1993))).

■ Courts have also found free exercise violations in cases where generally applicable prison policies were designed to accommodate inmates' religious dietary requirements, but the same allowances were not made for inmates subjected to disciplinary restrictions. In *Makin v. Colorado Department of Corrections*, 183 F.3d 1205 (10th Cir.1999), for instance, the general prison policy allowed meals to be provided to Muslim inmates between sunset and dawn to enable daytime fasting during Ramadan. But the *Makin* plaintiff's confinement in punitive segregation meant that his meals were delivered only during daylight hours. The Tenth Circuit affirmed the district court's finding that this arrangement violated Makin's First Amendment rights, because even though Makin was still able to observe the Ramadan fast by saving crackers and other non-perishable items from the meals delivered during the day and consuming them after sunset, having to take such measures "substantially diminished his qualitative spiritual experience." *Id.* at 1212. Such decisions make clear that inmates do not forfeit their free exercise rights when the burden on their religious practice results from discipline imposed for violating prison rules.

■ Of course, McEachin does not allege that his free exercise rights were infringed in the course of legitimate disciplinary measures. He claims that he was disciplined for failing to obey an order expressly given to him by a corrections officer who knew that completion of the task would require plaintiff to abandon religious prayers in which he was then

forbidden by his religion is different from (and more serious than) curtailing various ways of expressing beliefs for which alternatives are available."); *LaFevers v. Saffle*, 936 F.2d 1117 (10th Cir.1991) (holding that when an inmate's religious views requiring a vegetarian diet are sincerely held, prison policy may violate his free exercise rights even though vegetarianism is only a recommended, not a required element of plaintiff's religion, Seventh–Day Adventism); *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir.1987) (holding that "[i]nmates have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion").

*But see Williams v. Morton*, 343 F.3d 212 (3d Cir.2003) (finding that prison was not required to provide Muslim inmates with Halal meat since they were instead given a vegetarian diet that did not violate religious standards); *Garza v. Carlson*, 877 F.2d 14 (8th Cir.1989) (applying balancing test to find that Jewish inmate's free exercise rights were not violated by threat of receiving involuntary nourishment during a prolonged religious fast, given prison's legitimate interest in preserving inmate's life and health).

engaged. Precedent suggests that inmates have a right not to be disciplined for refusing to perform tasks that violate their religious beliefs. *See, e.g., Hayes v. Long*, 72 F.3d 70 (8th Cir.1995) (holding that Muslim plaintiff had a clearly established right to refuse to handle pork while performing kitchen duties, and reversing the district court's grant of summary judgment to prison official defendants who disciplined the plaintiff for declining to help prepare pork chops).[8]

### B. Appointment of Counsel

■ Given that McEachin has pursued his claims *pro se* and IFP, and given the possibility that his complaint might be amended or construed to state a claim under RLUIPA, a statute that may present complex legal issues, *compare Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir.2003) (holding that RLUIPA violates Establishment Clause), *with Madison v. Riter*, 355 F.3d 310 (4th Cir.2003) (reaching the opposite conclusion), it may be advisable for him to have the assistance of counsel. We therefore instruct the district court, on remand, to consider appointing counsel to represent McEachin in these proceedings if the plaintiff still desires such representation. *Cf. Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir.2002).

### III. Conclusion

The district court improperly dismissed the plaintiff's First Amendment claim. Accordingly, its judgment as to that claim is hereby REVERSED and the case is REMANDED for further proceedings consistent with this opinion. The district court's judgment with respect to the plaintiff's

---

8. Even assuming that a plaintiff has shown the requisite burden on religion, the plaintiff's success on his First Amendment free exercise claim, of course, still depends upon the defendants' inability to demonstrate a reasonable

Eighth and Fourteenth Amendment claims is AFFIRMED.

relationship between the potentially infringing policy and a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).