Collymore v. Commissioner of D.O.C.

IN THE

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2022
Argued: March 21, 2023
Decided: July 14, 2023

No. 21-2292
_____

ANTHONY T. COLLYMORE,

*Plaintiff - Appellant*,

v.

KRYSTAL MYERS, RN; all defendants are being sued in their individual capacity, K. PHILLIPS, RN/MEDICAL SUPERVISOR; all defendants are being sued in their individual capacity, CHENA MCPHERSON, APRN; all defendants are being sued in their individual capacity,

*Defendants - Appellees*,

COMMISSIONER OF THE DEPARTMENT OF CORRECTIONS, All defendants are being sued in their individual and official capacities, WARDEN, OF MACDOUGALL, All defendants are being sued in their individual and official capacities, ROBERT MARTIN, All defendants are being sued in their individual and official capacities, LIGHTNER, MS., H.S.A. OF MACDOUGALL, All defendants are being sued in their individual and official capacities, JOHN DOE #1, All defendants are being sued in their individual and official capacities, JOHN DOE #2, All defendants are being sued in their individual and official capacities, JOHN DOE #3, All defendants are being sued in their individual and

official capacities, JANINE BRENNAN, All defendants are being sued in their individual and official capacities,

*Defendants*

_____

Before: JACOBS, LYNCH, and LEE, *Circuit Judges*.

Anthony T. Collymore appeals from the order of the United States District Court for the District of Connecticut (Covello, *J*.) dismissing his initial and amended § 1983 complaints alleging deliberate indifference to his painful scalp condition by several prison officials and medical providers.   The district court dismissed several defendants identified in his initial complaint *sua sponte* under the prisoner screening statute, 28 U.S.C. § 1915A(b), and granted limited leave to amend against two defendants.   After Collymore amended his complaint, the district court again dismissed, this time on the ground that Defendants were entitled to qualified immunity, as Collymore had failed to plead a sufficiently "serious medical condition."

We **VACATE** and **REMAND**.

_____

LAUREN E. MATLOCK-COLANGELO (Omar A. Khan, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, *for Plaintiff-Appellant*.

THOMAS J. PLUMRIDGE (Edward W. Mayer, Jr., *on the brief*), Danaher Lagnese, P.C., Hartford, CT, *for Defendant-Appellee Chena McPherson, APRN*.

JAMES M. BELFORTI, Assistant Attorney General (William Tong, Attorney General, Joshua Perry, Solicitor General, *on the brief*), Hartford, CT *for Defendants-Appellees Myers and Phillips*.

DENNIS JACOBS, *Circuit Judge*:

Anthony T. Collymore, an inmate at the MacDougall-Walker Correctional Institution, sued *pro se* under 42 U.S.C. § 1983 alleging that the defendants failed for years to provide him with adequate medical care for painful infections and lesions on his scalp, in violation of the Eighth Amendment. He appeals by counsel from a final judgment of the United States District Court for the District of Connecticut (Covello, *J.*), dismissing his claims. His initial complaint ("Initial Complaint") named five administrators (collectively, the "Administrator Defendants") and three John Doe medical professionals. That complaint was dismissed *sua sponte* prior to service on the defendants and without leave to amend as to the administrators. An Amended Complaint omitted the administrators (no leave to amend having been given as to them), and named in addition three nurse defendants: Krystal Myers, K. Phillips, and Chena McPherson (collectively, the "Nurse Defendants"). The Amended Complaint was dismissed, after service, on the ground of qualified immunity because there is no Supreme Court or Second Circuit decision holding that a scalp condition constitutes a serious medical condition.

We conclude that the appeal from the judgment brings up for review the dismissal of both complaints, that the Initial Complaint should not have been dismissed against the Administrator Defendants on the ground of frivolousness prior to service and without leave to amend, and that the Amended Complaint should not have been dismissed on the qualified immunity ground adduced by the district court.   We therefore **VACATE** and **REMAND** for further proceedings consistent with this opinion.

The Initial Complaint is considered in Point I and the Amended Complaint, in Point II.   Both were filed *pro se*, and are somewhat disordered; so too is the course of procedure.   We do our best.

## I

The facts adduced are drawn from the Initial Complaint, filed on March 8, 2021, which alleges that starting in 2014 or so, Collymore experienced "a serious condition of [the] scalp" that over time resulted in itching, irritation, and the formation of painful scabs and open sores that bled and oozed pus.   Complaint at 8.

4

The condition worsened in 2017, while Collymore was in the MacDougall-Walker Correctional Institution ("MacDougall"). After reaching out to other officials, Collymore on August 11, 2017, requested medical care from a Health Services Administrator, defendant Lightner ("HSA Lightner"). Writing again to HSA Lightner on April 22, 2019, Collymore advised that his condition had worsened and was again infected, that his pain was "intolerable," and that his efforts to get medical attention had failed to yield a diagnosis or effective treatment. Id. HSA Lightner allegedly "failed in her administrative role to ensure that [Collymore] received adequate medical care. And because of Defendant Lightner's failure to act[,] [Collymore's] condition persisted and worsened." Id. at 8B.

The treatments administered by the John Doe Defendants were allegedly ineffective, and requests to see a specialist were denied. One John Doe Defendant sent by the block officer at first refused to treat Collymore, and later prescribed a course of antibiotics that cleared up his infections only temporarily.

In the period 2014 to 2019, when Collymore was first at MacDougall, he told the warden (defendant Chapdelain) in writing and in person that he was receiving inadequate treatment.

5

At the end of 2019, Collymore was transferred from MacDougall to Corrigan-Radgowski Correctional Center ("Corrigan"), where an unidentified doctor administered antibiotics and a medicated shampoo, but advised that there would be a long wait to see a dermatologist. When the prescription ran out, Collymore's condition regressed. A medical grievance filed on March 1, 2020 claimed that the pain was intolerable and demanded further treatment. Three weeks later, Collymore wrote to the Corrigan warden (defendant Martin), who wrote back on March 23, 2020, to say that "I have been informed by medical that you have been referred to dermatology, but due to COVID-19, all non-urgent appointments are being postponed." Id. at 8G. On July 13, 2020, Collymore wrote to the Commissioner of the Department of Corrections (defendant Cook), who did not respond.

In August and October 2020, Collymore sent more grievances to defendant health services review coordinator Janine Brennan ("HSRC Brennan") which were "Returned Without Disposition." Id at 8I. HSRC Brennan allegedly "obstruct[ed] . . . the grievance process" by failing to resolve his case or listen to his appeals. Id. During this grievance process, Collymore complained directly to Warden Martin about HSRC Brennan. Over the ensuing months, Collymore

6

continued to make complaints and file grievances. His scalp condition ultimately resulted in painful keloid scarring.

On March 8, 2021, Collymore filed his Initial Complaint *pro se* against Commissioner Cook, Warden Chapdelain, Warden Martin, HSA Lightner, HSRC Brennan, and three John Does. The district court screened this Initial Complaint and dismissed it *sua sponte* via an initial review order, pursuant to 28 U.S.C. § 1915A(b). Under that statute, district courts are instructed to "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and "dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A(a)–(b). Because the dismissal was done *sua sponte* under the prisoner screening statute, the original defendants were never served.

The initial review order stated that Collymore failed to state a cognizable claim but noted that "Collymore may file an amended complaint against Drs. Doe 2 and Doe 3 only if he can allege facts showing that one or both doctors

treated him frequently and did not alter treatments that proved ineffective."[1]

App'x at 19. A subsequent order directed Collymore "to file an amended complaint, including his claims against the two additional medical providers, within 20 days of the date of this order. The amended complaint shall allege facts showing that these defendants treated the plaintiff with some frequency and did not alter ineffective prior treatment." D. Ct. ECF No. 12.

Collymore amended his complaint to name only the Nurse Defendants: Myers, McPherson, and Phillips. This appeal was filed after the District Court dismissed the Amended Complaint, and the Nurse Defendants argue that we should treat the appeal as pertaining only to the Amended Complaint, but we decline to do so. The form used by Collymore for the notice of appeal gives the appellant the option to select whether the appeal is from 1) the final judgment, or 2) a specific "order" of the court, with a blank space to specify the date of appealed ruling. Collymore, who had been appearing *pro se* up to that point, selected neither – that is, he did not specify whether he was appealing from the

---

[1] Dr. Doe 1 was dismissed on the ground that the claim against him was time-barred.

final judgment or merely from the order dismissing the Amended Complaint,

both of which were dated September 10, 2021 – but noted that he was appealing

a ruling from that date.[2]

Although a notice of appeal must "designate the judgment, order, or part

thereof being appealed," Elliott v. City of Hartford, 823 F.3d 170, 172 (2d Cir.

2016) (quoting Fed. R. App. P. 3(c)(1)(B)), "[a]s long as [a] *pro se* party's notice of

appeal evinces an intent to appeal an order or judgment of the district court and

appellee has not been prejudiced or misled by the notice, the notice's technical

deficiencies will not bar appellate jurisdiction," id. (quoting Grune v.

Coughlin, 913 F.2d 41, 43 (2d Cir. 1990)).   Accordingly, where, as here, a *pro se*

litigant – appealing *after* the entry of final judgment – fails to specify the order

---

[2]   Collymore's motion for appointment of pro bono appellate counsel references only the Amended Complaint; but a motions panel of this Court granted the motion and identified as an issue "whether the district court erred in dismissing Appellant's initial complaint."   When the motions panel asked for briefing on this issue, it ruled implicitly that this Court has jurisdiction to review the dismissal of the Initial Complaint.   We can revisit, but the Nurse Defendants' arguments to the contrary are unavailing.

9

from which the appeal is taken, we have consistently viewed a notice of appeal liberally and assume an intent to appeal from the final judgment.[3]

Even if a notice of appeal is construed as specifying the district court's order dismissing the Amended Complaint, Rule 3 of the Federal Rules of Appellate Procedure provides that "a notice of appeal encompasses the final judgment . . . if the notice designates . . . an order that adjudicates all remaining claims and the rights and liabilities of all remaining parties." Fed. R. App. P. 3(c)(5)(A); see also Elliott, 823 F.3d at 173 (noting that "in the absence of prejudice to an appellee, we read a *pro se* appellant's appeal from an order closing the case as constituting an appeal from all prior orders").

---

[3] See Frederick v. United Bhd. Of Carpenters & Joiners of Am., 665 F. App'x 31, 3 (2d Cir. 2016) (summary order) ("Because [the *pro se* plaintiff] filed the notice of appeal after judgment was entered but did not correctly identify the entry date of any order or the judgment, the notice of appeal should be liberally construed to designate the judgment." (citing Phelps v. Kapnolas, 123 F.3d 91, 93 (2d Cir. 1997))); Yong Kui Chen v. Wai Yin Chan, 615 F. App'x 10, 3 (2d Cir. 2015) (summary order) ("While [the *pro se* plaintiff's] notice of appeal specifies that he appeals from [an order regarding damages], we construe his notice liberally as an appeal from the final judgment that confers jurisdiction over [his] challenges to the district court's evidentiary rulings at trial that are subsumed in that judgment."); see also Wang v. Verizon Commc'ns Inc., No. 22-128, 2023 WL 309607, at *1 (2d Cir. Jan. 19, 2023) (summary order) (explaining that "a failure to specify a particular order does not limit the scope of the appeal" (citing Fed. R. App. P. 3(c)(5)(A))).

And of course, an appeal from a final judgment allows appeal of all prior interlocutory orders.   Phelps v. Kapnolas, 123 F.3d 91, 93 (2d Cir. 1997).

Having decided that the Court has jurisdiction over the dismissal of the Initial Complaint, we now conclude that that dismissal was improper.   The Initial Complaint was dismissed *sua sponte* under the prisoner screening statute at 28 U.S.C. § 1915A(b), which allows dismissal of a complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted[.]"   This Court reviews *sua sponte* dismissals under the screening statute *de novo*. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).   The dismissal of the initial complaint against all Defendants on grounds of frivolousness was improper because Collymore stated a non-frivolous claim that his Eighth Amendment rights were violated. Moreover, that error was compounded by the denial of leave to amend, which exceeded the district court's discretion. See Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321, 333 (2d Cir. 2000).

"*Sua sponte* dismissal of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court."   Moorish Sci. Temple of Am., Inc. v. Smith, 693 F.2d 987, 990 (2d Cir. 1982) (citing cases); see also Benitez v. Wolff, 907 F.2d

11

1293, 1295 (2d Cir. 1990) ("*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis either in law or in fact.   Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants' answer." (citations and internal quotation marks omitted)).   In the § 1983 context, such dismissals are "inappropriate" – regardless of the merits – if the complaint alleges that "(1) the defendant was a state actor . . . when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States."   Milan v. Wertheimer, 808 F.3d 961, 964 (2d Cir. 2015) (internal quotation marks omitted).

"Our reluctance to dismiss [*pro se*] complaints at such an early stage of the proceedings stems in part from the limited legal knowledge and resources available to *pro se* plaintiffs, which may hamper their ability to articulate potentially valid claims in legally cognizable language."   McEachin, 357 F.3d at 201.   "We have also noted the difficulties attendant to appellate proceedings where the defendant has not answered the plaintiff's allegations and the waste of

12

judicial resources that results when remand for fact development proves necessary." Id. (citations omitted).

Collymore's Initial Complaint had "an arguable basis . . . in [both] law [and] fact." Benitez, 907 F.2d at 1295. His *pro se* complaint is factually consistent and legally coherent: it alleges gruesome details about his scalp condition, and narrates how he frequently sought treatment over the course of five years without eliciting adequate care. Its flaws raise questions of supervisory liability that are not before us on this appeal. Rather, the question is whether "a liberal reading of [the Initial Complaint] gives any indication that a valid claim might be stated." McEachin, 357 F.3d at 201 (internal quotation marks omitted). The Initial Complaint withstands that lenient test. Under these circumstances, the *sua sponte* dismissal of Collymore's claims against the Administrative Defendants on frivolousness grounds was erroneous, and the error was compounded by the denial of leave to amend. See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (explaining that 1915A(b) "dismissals must accord the inmate an opportunity to amend the complaint unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim").

**II**

After the district court granted leave to amend only as to two of the John Doe Defendants, Collymore filed a motion seeking to identify those two remaining John Doe Defendants as a "Dr. Feder" and nurse Kara Phillips. The court granted this motion on April 19, 2021. Collymore filed a second motion to amend and to stay the case on May 3, 2021, claiming that new information had come to light via the Freedom of Information Act, and that Collymore would now seek to name not a "Dr. Feder and Kara Phillips," but rather two *different* treating nurses, Chena McPherson and Krystal Myers. The district court denied the request for a stay of proceedings but granted the part of the motion requesting leave to amend:

> The plaintiff is hereby directed to file an amended complaint, including his claims against the two additional medical providers, within 20 days of the date of this order. The amended complaint shall allege facts showing that these defendants treated the plaintiff with some frequency and did not alter ineffective prior treatment.

D. Ct. ECF No. 12.

Collymore filed his Amended Complaint against McPherson, Myers and Phillips on May 20, 2021. (The amendment did not strictly conform to the

14

order's instructions directing Collymore to amend, but no issue has been made of it).   The Amended Complaint alleged the same underlying facts regarding the symptoms and severity of his scalp condition and provided the following examples of alleged deliberate indifference to that condition on the part of the three Nurse Defendants:

**McPherson:**   During Collymore's first visit with McPherson in May 2019, he told her that a "sebex shampoo," prescribed by the medical staff was ineffective and he asked to see a specialist.   Am. Compl. at 7.   McPherson examined his scalp and continued the sebex shampoo without referring him to a doctor.   McPherson's medical report described the condition as a "rash" and did not mention the open sores.   Id. at 8.

On a second visit, McPherson made Collymore choose between addressing his scalp or an unrelated heart condition.   After he elected to be examined for the heart condition, her report omitted reference to his scalp.   When Collymore again saw McPherson about his scalp in August 2019, she prescribed a different shampoo for two months and a cream for three months.   However, he ultimately received the same sebex shampoo, and the cream ran out in a month.

15

**Myers:** Collymore saw Myers in October 2019, and asked to be seen by a specialist. Myers said she would put him on the list to see the doctor, but failed to do so; and her report dismissed his scalp condition as "slightly red [and] itchy." Id. at 8-9. In December, Myers gave Collymore enough antibiotics for a few days, and refused to schedule a doctor's appointment.

**Phillips:** After his transfer to Corrigan, Collymore sent three letters to Phillips in February and March 2020, advising that his worsening condition required the attention of a doctor. She provided no treatment but ultimately said he would be seen by a dermatologist. In September, Collymore wrote again to Phillips, asking to go to the hospital for scalp treatment. Phillips responded that he was "on the list to see dermatology." Id. at 14. She repeated that assurance in December when he reported to her that the pain and inflammation was such that he could no longer sleep.

In May 2021, he was still reporting that scalp pain prevented sleep, and was told he was being "added to see the doctor." Id. at 15. A few days later, he again complained to a block officer, and he was sent back to the medical unit where he again received a short course of antibiotics.

16

The Amended Complaint sought damages as well as injunctive relief in the form of an order directing the defendants to provide him with adequate medical care.

Nurses Myers and Phillips were served with the Amended Complaint and promptly moved to dismiss. (Nurse McPherson did not receive service until later.) The District Court granted the motion on the grounds that all three Nurse Defendants were protected by qualified immunity, while ignoring Collymore's request for injunctive relief, which is not barred by qualified immunity. Sudler v. City of New York, 689 F.3d 159, 177 (2d Cir. 2012).[4]

In so ruling, the District Court acknowledged the Supreme Court's directive that "'clearly established law' should not be defined 'at a high level of generality'" for the purposes of qualified immunity analysis. App'x at 31 (quoting White v. Pauly, 580 U.S. 73, 79 (2017)). Accordingly, the court then looked to "Supreme Court or second circuit cases [to] determine what a reasonable officer would understand in light of that law." Id. at 32. Both the

---

[4] Because we conclude that the district court improperly dismissed the complaint based on flawed qualified immunity analysis and remand on those grounds, we need not consider the claim for injunctive relief.

17

parties and the district court focused that case review on the first element of the qualified immunity analysis: whether existing caselaw put the Nurse Defendants "on notice that Collymore's scalp condition was a serious medical need." Id. at 33. The district court found it to be decisive that "[t]here are no United States Supreme Court or second circuit cases holding that a scalp condition causing painful open sores is a serious medical need." Id. (The district court did not consider whether the three Nurse Defendants acted in a "deliberately indifferent" manner toward Collymore.)

We review a district court's dismissal order *de novo*, "accept[ing] as true all the material allegations of the complaint, and draw[ing] all reasonable inferences in the plaintiff's favor." Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend VIII. This includes punishments involving "the unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976). In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). But qualified immunity "shields public officials from liability for their discretionary

18

acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir. 1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The District Court's analysis rested on the objective component of this standard: whether Collymore's medical needs were "sufficiently serious." Hathaway, 37 F.3d at 66 (internal quotation marks omitted). And that analysis rested on the absence of "Supreme Court or second circuit cases holding that a scalp condition causing painful open sores is a serious medical need." App'x at 33.

However, Eighth Amendment claims for the deprivation of medical care are not analyzed body-part by body-part, as we have observed. See Rodriguez v. Manenti, 606 F. App'x 25, 26 (2d Cir. 2015) (summary order). A leg can be infected by gangrene as well as athlete's foot, but only one is serious. Conditions such as inflammation can be minor and treatable, or they can be agonizing and resistant. The question will be whether a plaintiff plausibly alleges a condition that produces severe and unmanaged pain. See Hathaway, 37 F.3d at 66. So while "sufficiently serious" medical conditions "should not be defined 'at a high level of generality,'" White v. Pauly, 580 U.S. 73, 79 (2017)

(quoting Ashcroft v. al–Kidd, 563 U.S. 731, 742 (2011)), it is error to demand

specificity as to the site and cause of pain if it is intense and inflicted in an

"unnecessary and wanton" manner.   The absence of precedents involving scalp

infection does not mean that Collymore cannot plausibly allege "chronic and

substantial pain" that is "important and worthy of comment or treatment," and

which "significantly affects daily activities."   Brock v. Wright, 315 F.3d 158, 162

(2d Cir. 2003).

In Chance v. Armstrong, 143 F.3d 698 (2d Cir. 1998), this Court addressed

painful, degenerative conditions such as Collymore's in the dental context:

> Of course, not all claims regarding improper dental care will be
> constitutionally cognizable.   Dental conditions, like other medical
> conditions, may be of varying severity.   The standard for Eighth
> Amendment violations contemplates "a condition of urgency" that
> may result in "degeneration" or "extreme pain."   Hathaway, 37
> F.3d at 66 (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990)
> (Pratt, *J.*, dissenting)).   A prisoner who nicks himself shaving
> obviously does not have a constitutional right to cosmetic surgery.
> But if prison officials deliberately ignore the fact that a prisoner has
> a five-inch gash on his cheek that is becoming infected, the failure to
> provide appropriate treatment might well violate the Eighth
> Amendment.   Compare Arce v. Banks, 913 F. Supp. 307, 309–10
> (S.D.N.Y. 1996) (small cyst-like growth on forehead not sufficiently
> serious), with Gutierrez v. Peters, 111 F.3d 1364, 1373–74 (7th Cir.
> 1997) (large cyst that had become infected was a serious medical
> condition).

Chance, 143 F.3d at 702. This Court has repeatedly invoked the analysis in Chance, noting that conditions causing pain falling "somewhere between 'annoying' and 'extreme'" can be serious medical conditions, that the condition need not be "life-threatening," and that the pain need not be "at the limit of human ability to bear." Brock, 315 F.3d at 163.

In sum, it is alleged that Collymore's scalp condition causes him "intolerable" pain that felt like his "scalp was on fire", Complaint at 7-9; Am. Compl. at 9, 13-14, 16; has repeatedly become infected and required antibiotics, id; has produced scabs that ooze pus, Complaint at 20; has interfered with Collymore's daily life, including his ability to sleep, Complaint at 13; Am. Compl. at 6, 10, 15; has resulted in the formation of painful keloid scars, Complaint at 20; and has proven to be both degenerative and resistant to treatment for years, Am. Compl. at 7-9. The right to be free from such a condition is clearly established.

It was therefore error to dismiss Collymore's Amended Complaint for failure to satisfy the objective component of the Eighth Amendment deliberate indifference standard. While it may be that the defendants did not act with "deliberate indifference" or that some or all of the conduct can be classified as

21

malpractice at worst, the district court did not pass on those issues and this Court will not consider them now.

Accordingly, the judgment of the District Court is **VACATED** and **REMANDED** with respect to the Eighth Amendment claims concerning Collymore's scalp condition. On remand, Collymore shall be allowed to further amend his complaint to restate his claims against the defendants named in his Initial Complaint.