IN THE

# United States Court of Appeals
# For the Second Circuit

————

AUGUST TERM, 2023

ARGUED: SEPTEMBER 20, 2023
DECIDED: JANUARY 13, 2025

Docket No. 22-2884

ANTONIO MALLET,

*Plaintiff-Appellant,*

*v.*

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION,
ANTHONY J. ANNUCCI, in his official capacity as the acting commissioner of the
New York State Department of Corrections and Community Supervision, STATE
OF NEW YORK, DR. MERVAT R. MAKRAM, DR. THOMAS VITO STELLATO, DR.
ANTHONY L. RITACCIO,

*Defendants-Appellees,*

JOHN DOES, CORRECTIONS OFFICERS 1-10, JANE/JOHN DOES and MEDICAL
PERSONNEL 1-10,

*Defendants,*

OFFICE OF NEW YORK STATE ATTORNEY GENERAL,

*Interested-Party.*

————

Appeal from the United States District Court
for the Southern District of New York
Docket No. 1:22-cv-01604 – Colleen McMahon, *District Judge.*

————

Before: CALABRESI, MENASHI, and PÉREZ, *Circuit Judges.*

_____

While he was incarcerated at Woodborne Correctional Facility, Plaintiff-Appellant Antonio Mallet repeatedly sought medical care for urinary obstruction and painful urination. These are classic symptoms of prostate cancer. While Mallet was referred to a physician for a cystoscopy, the prison doctors failed to conduct any additional testing to investigate the worrisome cystoscopy results or to look further for prostate cancer. Instead, Mallet was prescribed medication to treat a benign enlarged prostate and led to believe that his urinary symptoms would resolve in due course. They did not.

Mallet was released on parole in January 2019. With the opportunity to consult outside medical providers, he was eventually diagnosed with late-stage prostate cancer in May 2021. On February 25, 2022, Mallet sued the State of New York, the New York State Department of Corrections and Community Supervision ("DOCCS"), Anthony J. Annucci in his official capacity as the acting commissioner of DOCCS, and three medical providers Mallet saw while incarcerated, Dr. Mervat Makram, Dr. Thomas Stellato, and Professor Anthony Ritaccio. Mallet's complaint alleged deliberate indifference to his medical needs in violation of the Eighth Amendment, as well as other Fifth, Eighth, and Fourteenth Amendment violations, retaliation, conspiracy, malpractice, and negligence. Upon motion from the defendants, the district court (McMahon, *J.*) dismissed the constitutional claims as untimely, reasoning that the deliberate indifference claim must have accrued by the time Mallet was released from custody in January 2019 and, therefore, was not within the three-year statute of limitations for Section 1983 claims in New York State. Having dismissed the constitutional claims, the district court declined to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

We find that, based on the facts alleged in the complaint, it is plausible that Mallet's deliberate indifference claim had not accrued by February 25, 2019, and thus it is also plausible that his complaint was filed within the three-year limitations period. Furthermore, with respect to defendants Dr. Makram and Dr. Stellato, we reject Defendants-Appellees' argument that the judgment can be

affirmed on the alternative ground that the Eighth Amendment claims are implausible. We, however, find that Mallet has failed to state a plausible Eighth Amendment claim against Professor Ritaccio, and we also find that the constitutional claims against New York State, DOCCS, and Annucci acting in his official capacity are barred by sovereign immunity. We therefore **AFFIRM in part**, **REVERSE in part**, and **VACATE in part**, and the case is **REMANDED** for further proceedings.

Judge Menashi dissents in a separate opinion.

―――――――――――――

CANER DEMIRAYAK, Law Office of Caner Demirayak, Esq., *for Plaintiff-Appellant*.

DANIEL S. MAGY, Office of the New York State Attorney General, *for Defendants-Appellees*.

―――――――――――――

CALABRESI, *Circuit Judge*:

This case asks us to apply the established rule for statutes of limitations—that they accrue when the plaintiff knew or should have known the facts that establish their claim—to Antonio Mallet's allegation that New York State, the New York State Department of Corrections and Community Supervision, the Department's acting commissioner at the time of his incarceration, and Dr. Mervat Makram, Dr. Thomas Stellato, and Professor Anthony Ritaccio (collectively, "Defendants-Appellees") acted with deliberate indifference in failing to treat Mallet's prostate cancer while he was incarcerated.

The United States District Court for the Southern District of New York (McMahon, *J.*) granted the Defendants-Appellees' Rule 12(b)(6) motion and dismissed Mallet's suit as untimely. Mallet alleges, and at this stage we must accept, that when he repeatedly sought treatment for his urinary symptoms, he did not recognize those symptoms as telltale signs of prostate cancer—but the Defendants-Appellees did, and they consciously disregarded that risk. Because the injury for which Mallet seeks relief is cancer, the relevant question is when he knew or should have reasonably known that he had prostate cancer. This is a question of fact, but at this stage, it is very plausible that Mallet acquired this knowledge less than three years before he filed this suit, rendering his claims timely.

Therefore, we reverse the district court's dismissal of Mallet's deliberate indifference claims against Dr. Makram and Dr. Stellato. We also vacate the dismissal of the other six constitutional claims against Dr. Makram, Dr. Stellato, and Professor Ritaccio and the dismissal of the state claims against all Defendants-Appellants. We, however, affirm the dismissal of the deliberate indifference claim against Professor Ritaccio as implausible and the dismissal of all constitutional

claims against New York, DOCCS, and Anthony Annucci as barred by sovereign immunity.

                           **BACKGROUND**

   **A. Factual Background**[1]

   Antonio Mallet was an inmate in the custody of DOCCS from 1999 to 2019. On April 21, 2017, while incarcerated at Woodborne Correctional Facility, Mallet asked his primary care provider Dr. Mervat Makram for a referral to a specialist who could treat symptoms of urinary obstruction. On September 7, 2017, Mallet was examined by Dr. Thomas Stellato, a urologist at Kingston Urological Associates. Dr. Stellato performed a cystoscopy, "which confirmed urinary retention, urinary obstructive symptoms and mild congestion of the prostatic lobe, posterior urethra and bladder neck" and also revealed "evidence of bladder trabeculation +1." J. App'x at 14. These results, Mallet alleges, "would lead any

---

[1] All citations to the record refer to Mallet's amended complaint.

reasonable medical professional to order additional testing to rule out prostate cancer." *Id.*

But Dr. Stellato did not order additional testing for prostate cancer. Instead, he recommended that Mallet take Flomax, "an alpha-blocker medication that helps with urinary dysfunction" but "neither treats nor addresses prostate cancer." *Id.* at 15. He also recommended that Mallet be seen by a neurologist, "without any explanation as to how a neurologist would have any ability to inspect [Mallet's] urological systems." *Id.* at 14. Dr. Makram reviewed Dr. Stellato's clinical report, and she too did not order any additional testing for prostate cancer. But she did refer Mallet to a neurologist at Dr. Stellato's recommendation.

On October 12, 2017, Mallet again complained of urinary dysfunction to the Woodborne medical staff, and he was again advised to continue taking Flomax. Dr. Makram reviewed the note from this encounter and continued to prescribe the medication without conducting further testing to detect or rule out prostate cancer. One week later, on October 20, 2017, Mallet complained of upper abdominal pain and reported blood in the toilet. Dr. Makram "reviewed this note"

and personally examined Mallet, but, once again, she "did not address the urinary symptoms and clinical signs of prostate cancer." *Id.* at 15.

On November 22, 2017, Mallet was examined by Anthony Ritaccio, a Professor of Medicine at Albany College who is unlicensed to practice medicine in the State of New York. Professor Ritaccio was "tasked by the governmental defendants to perform follow up testing and examination of plaintiff as a neurologist." *Id.* at 11. In his subsequent report of the encounter, Professor Ritaccio wrote a note saying, "I am not a neurologist. I don't have a differential for this." *Id.* at 15. He also questioned why Dr. Stellato had referred Mallet to a neurology professor to treat urinary obstruction. Dr. Makram reviewed Professor Ritaccio's notes but again "took no other actions." *Id.*

On November 27, 2017, Mallet again reported urinary retention to the attending nurse at Woodborne. He made similar reports on March 5 and 6, 2018. And then again on September 14, 2018. Each time, Dr. Makram and her staff "did nothing to address" the indications of prostate cancer. *Id.* at 16. Moreover, their

records from the March visits "falsely stated" that Mallet's cystoscopy in September had "yielded negative results." *Id.*

During this period, "officers and nurses would call [Mallet] scum for continuing to ask for medical treatment," insisting that he was faking his inability to urinate so that he could avoid a positive drug test. J. App'x at 12–13. They also told Mallet that "he would only get the minimum treatment the State will allow at the behest of [Dr. Makram]," that "he should not expect good treatment in prison[,] and that not everyone makes it out alive." *Id.* at 13.

In the fall of 2018, Mallet was transferred to Queensboro Correctional Facility in anticipation of his upcoming parole. There, he was examined by another medical provider who reviewed his records from Woodborne. This provider told Mallet that she was unwilling to "change his treatment or prescriptions . . . after so many years of consistent treatment," but she added that once Mallet was released on parole, he would "hopefully . . . get better treatment." J. App'x at 17.

Mallet was paroled on January 16, 2019. It had been over twenty months since he first complained of urinary difficulties. In July 2019, Mallet sought treatment for his persistent symptoms at Woodhull Hospital, and he was eventually referred to a urologist. Until this, Mallet had been using the remaining

Flomax prescription and "was not aware of any cancer in his prostate." When Mallet saw the urologist on August 10, 2020, he was found to have an elevated Prostate-Specific Antigen ("PSA") level of 8.43.[2] The urologist prescribed medication "in an attempt to shrink the prostate to determine possible causes of the elevated PSA level and urinary blockage." J. App'x at 18. At follow-up visits on October 14, 2020, and February 16, 2021, Mallet's PSA levels were slightly reduced from the August test but still abnormally high.

On April 6, 2021, the urologist performed a biopsy of Mallet's prostate, which ultimately revealed "a large tumorous carcinoma." J. App'x at 18. On June 10, 2021, Mallet "was forced to undergo a robotic assisted radical prostatectomy due to the advanced prostate cancer." *Id.* The post-operative report from the surgery "noted a Gleason score of 10 out of 10 (indicative of very aggressive cancer) and adenocarcinoma of the prostate." *Id*. Mallet alleges that it was around this time, in the late spring of 2021, that he first "began to suspect he may have

---

[2] Mallet alleges that his urology appointment was delayed due to his difficulties finding health insurance combined with the COVID-19 lockdown restrictions.

been a victim of the defendants' failure to properly treat, diagnose and care for his prostate." *Id.* at 19.

Mallet now uses a bag to urinate and can no longer produce viable semen. He also suffers from daily severe pain, and, as of June 2022, was expected to have at least three more surgeries—including a penile prothesis implantation. As for his life expectancy, Mallet states that his "chance of survival from the cancer is non-existent as the prostate cancer has metastasized." *Id.*

**B. Procedural History**

Mallet filed his initial complaint on February 25, 2022, followed by an amended complaint on June 30, 2022. The amended complaint included seven claims under 42 U.S.C. § 1983 alleging: (1) deliberate indifference to a serious medical condition in violation of the Eighth Amendment; (2) denial of medical care in violation of the Fourteenth Amendment; (3) retaliation; (4) other violations of the Fifth, Eighth, and Fourteenth Amendments; (5) failure to intervene in constitutional rights violations; (6) supervisory liability for constitutional rights violations; and (7) conspiracy to violate constitutional rights ("the constitutional

claims"). The amended complaint also included two state law claims for (8) medical malpractice and (9) negligence.

Defendants-Appellees moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argued that: (a) the constitutional claims were time-barred; (b) the constitutional claims were implausible; (c) the individual defendants were covered by qualified immunity on the constitutional claims; (d) the state defendants were covered by sovereign immunity on the constitutional claims; (e) the state law claims against the individual defendants could not be brought in federal court under New York statutory law; and (f) the court should decline to exercise supplemental jurisdiction over the remaining state law claims once the constitutional claims were dismissed.

The district court granted the motion to dismiss based on the statute of limitations for the deliberate indifference claim. The district court reasoned that Mallet's Eighth Amendment claim must have accrued, at the latest, by the time he was released from prison in January 2019 because he should have known that he was (allegedly) being treated with deliberate indifference while he was incarcerated. Accordingly, the district court determined that Mallet's

constitutional claims were untimely because Section 1983 claims have a three-year statute of limitations in New York, yet Mallet's complaint was filed more than three years after the latest possible accrual date.[3] Having dismissed the constitutional claims, the district court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice. Mallet timely appealed.

**DISCUSSION**

**A. Standard of Review**

"We review *de novo* a district court's grant of a motion to dismiss, including its legal interpretation and application of a statute of limitations." *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)).

---

[3] The district court analyzed the timeliness of all seven constitutional claims using the accrual date for the Eighth Amendment claim, and neither party argues on appeal that the constitutional claims might have accrued on different dates. We therefore proceed on the assumption that the timeliness of all seven constitutional claims rises and falls with that of the Eighth Amendment claim.

**B. Accrual**

A Section 1983 claim does not accrue until the plaintiff "has a complete and present cause of action." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (internal quotation marks omitted); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007). The accrual analysis involves two steps. We begin by "identifying the specific constitutional right alleged to have been infringed." *McDonough v. Smith*, 588 U.S. 109, 115 (2019) (internal quotation marks omitted); *see also, e.g.*, *Campbell,* 782 F.3d at 100 (reviewing the elements of a First Amendment retaliation claim to determine accrual date). Next, we ask when the plaintiff knew or had reason to know of "the injury which is the basis of his action," *i.e.*, the alleged injury which— according to the plaintiff—amounts to an infringement of that constitutional right. *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980); *see also Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). In both steps of this analysis, we may look to "common-law principles governing analogous torts" as a "source of inspired examples." *McDonough*, 588 U.S. at 116 (internal quotation marks omitted). But the accrual date of a Section 1983 claim is ultimately a "question of federal law," *Wallace*, 549 U.S. at 388, and as such our analysis is governed by federal "articulations of the right at issue and its contours." *McDonough*, 588 U.S. at 115.

Mallet claims that his Eighth Amendment right to be free from cruel and unusual punishment was infringed by Defendants-Appellees' "deliberate indifference" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The standard of deliberate indifference includes both subjective and objective components." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). First, Mallet must show that, while he was incarcerated, he suffered from a medical condition that is, "in objective terms, sufficiently serious." *Id.* (internal quotation marks omitted). Though there is no single metric, we have previously held that a "sufficiently serious" medical condition in the Eighth Amendment context refers to a "condition of urgency that may result in degeneration or extreme pain," *id.*, that "significantly affects daily activities," or that involves "chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (internal quotation marks omitted). The condition need not be "life-threatening" or "at the limit of human ability to bear," but it must be more than simply "uncomfortable and annoying." *Id.* at 163; *see also Collymore v. Myers*, 74 F.4th 22, 30 (2d Cir. 2023) (noting that Eighth Amendment deliberate indifference claim will be dismissed unless "a plaintiff plausibly alleges a condition that produces severe and unmanaged pain").

If Mallet can prove that he suffered from an objectively serious medical condition within the meaning of the Eighth Amendment, he will then have to establish that Defendants-Appellees acted with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996). To prevail, he must show that the acts or omissions of Defendants-Appellees "evince[d] a conscious disregard of a substantial risk of serious harm." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (internal quotation marks omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Taken together, then, Mallet's deliberate indifference claim could not have accrued until he either knew or had reason to know both (1) that he suffered from an objectively serious medical condition while he was incarcerated and (2) that Defendants-Appellees failed to provide adequate treatment because they consciously disregarded a substantial risk to his health and safety. Put differently, Mallet could not have brought his deliberate indifference claim before he knew or should have known these facts because he would not yet have had a complete and present cause of action. *See Campbell*, 782 F.3d at 100.

Under this standard, the accrual analysis for an Eighth Amendment deliberate indifference claim often raises factual questions about when a plaintiff

knew or should have known of the circumstances tending to establish either the objective or subjective components of the alleged violation. *Cf. Barret v. United States*, 689 F.2d 324, 333 (2d Cir. 1982) (finding that there were outstanding  issues of fact raised by the accrual test for a medical malpractice claim); *Kronish v. United States*, 150 F.3d 112, 124 (2d Cir. 1998) (noting that the *Bivens* claim accrual analysis may raise a "question for the jury" about when the plaintiff knew or should have known of his alleged constitutional injury). These factual issues must, as always, be dealt with in a way that is appropriate to the relevant stage of litigation. Where, as here, the statute-of-limitations defense has been raised at the pleadings stage, all factual allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *See Shomo*, 579 F.3d at 183.

Mallet's complaint alleges that he neither knew nor should have known that he was suffering from the serious medical condition of prostate cancer until after he was released from custody. When all reasonable inferences are drawn in his favor, this claim is entirely plausible. Indeed, the gravamen of Mallet's complaint is that none of the medial providers he saw while incarcerated told him that he was exhibiting classic symptoms of prostate cancer or conducted the appropriate screening tests. Thus, although Mallet surely knew that he had some kind of

persistent medical problem which the Flomax was not addressing—which, we can only assume, is why he continued to speak with providers about his urinary issues—it is not reasonable to infer that he either knew or should have known that he was suffering from *this particular* serious medical condition—cancer—when none of the doctors he saw in prison gave him any indication that his condition was possibly cancer. *Cf. Toal v. United States*, 438 F.2d 222, 225 (2d Cir. 1971) (finding no clear error in district court's determination that malpractice claim had not accrued while plaintiff continued to rely on his doctor's "confident prognosis" that he "needn't worry" about his persistent symptoms).[4] Throughout his incarceration, then, Mallet could have reasonably assumed that he was experiencing "uncomfortable and annoying" urinary problems, which might

---

[4] To be sure, this principle from *Toal* was later called into question by *United States v. Kubrick*, 444 U.S. 111 (1979). In *Kubrick*, the Supreme Court held that a malpractice claim brought under the Federal Tort Claims Act ("FTCA") accrues when a reasonable person in the plaintiff's position would have "made inquiry among doctors with average training and experience in such matters" and, having done so, would have been told that "the defendant ha[d] failed to live up to minimum standards of medical proficiency." *Id.* at 122–23.

The instant case is not controlled by *Kubrick*, however. Neither we nor the Supreme Court has ever held that the *Kubrick* accrual rule applies to Eighth Amendment claims. And with good reason: unlike the plaintiff in *Kubrick*, an incarcerated person is not necessarily able to make her or his own independent inquiries about the quality of care she or he receives in prison. In this sense, she or he often *is* "at the mercy of" the very actors allegedly denying her proper medical treatment. *See Kubrick*, 444 U.S. at 122. For this reason, we find it entirely appropriate to continue to use *Toal*'s accrual standard in the context of Eighth Amendment claims.

qualify as serious, but not the symptoms of the serious underlying condition—cancer—as to which he is suing. *Brock*, 315 F.3d at 163. Therefore, it is plausible that his deliberate indifference claim had not accrued by the time he was released from prison.[5]

Nonetheless, Mallet's further claim that he neither knew nor should have known that he had this particular serious medical condition until he was officially diagnosed with prostate cancer in May 2021 is *not* plausible, considering the other facts alleged in his complaint. For example, Mallet alleges that when he visited the urologist on August 10, 2020, he was found to have an elevated PSA level and was prescribed a new medication to shrink his prostate. And then on April 6, 2021, once that medication also proved ineffective, the urologist conducted a biopsy of his prostate. Thus, Mallet was presumably put on notice that he had this specific

---

[5] In its decision below, the district court referenced a letter that Mallet's attorney wrote to the prison superintendent on June 25, 2018, asking why Mallet had not yet been treated for "a painful herniated disc in his back." J. App'x at 71. According to the district court, this letter demonstrated Mallet's "awareness of an injury" during his incarceration. *Id.* at 123. Nonetheless, because the letter dealt with a separate medical issue, Defendants-Appellees rightfully concede on appeal that this "letter is not necessary to determine when Mallet's federal law claims accrued." Appellees' Br. at 18 n.2**.**

serious medical condition related to his prostate issues earlier in the treatment

process, before he got the official cancer diagnosis.[6]

This means that, based on the facts alleged in the complaint, Mallet's claim must have accrued at some point after his release in January 2019 but before his diagnosis in the late spring of 2021. Determining the exact accrual date in this context may ultimately be a task for the factfinder. *See Eagleston*, 41 F.3d at 871. It will depend, most of all, on what exactly Mallet's post-release providers told him and when they told him. Nonetheless, based on the pleadings alone, we find it entirely plausible that Mallet neither knew nor should have known that his condition was not only serious but potentially cancer until, say, August 2020, when the first PSA test was administered. And if that is so, then it is also plausible that Mallet's claim was timely, since Mallet's complaint was filed less than three

---

[6] We recognize that this result differs from those reached by our sister circuits in *Devbrow v. Kalu*, 705 F.3d 765, 769 (7th Cir. 2013) (holding that because plaintiff's specific theory of deliberate indifference as alleged in his complaint was that the prison doctors culpably allowed his prostate cancer to metastasize, *his* deliberate indifference claim did not accrue until he was diagnosed with late-stage cancer) and *Lawson v. Okmulgee Cnty. Crim. Just. Auth.*, 726 F. App'x 685, 691 (10th Cir. 2018) (affirming the dismissal of a deliberate indifference claim as untimely because the claim must have accrued *at the latest* when the plaintiff learned he had cancer).

To the extent that those cases should be read as adopting a bright-line rule that a deliberate indifference claim for failure to diagnose and treat cancer cannot accrue until the plaintiff is officially diagnosed, we respectfully depart from that approach. However, we do not think that those cases are best read as adopting such a bright-line rule; therefore, contrary to Mallet's suggestion **[Reply Br. at 6]**, we do not think that our holding creates a circuit split.

years after that.[7] Therefore, the motion to dismiss the Eighth Amendment claim as

time-barred was improperly granted.[8]

---

[7] On appeal, Mallet argues in the alternative that his complaint was timely even if the deliberate indifference claim had accrued more than three years earlier because (a) the court should have applied a seven-year statute of limitations; or, alternatively, (b) the Governor of New York tolled the three-year statute of limitations for personal injury claims during the COVID-19 pandemic, thus tolling the limitations period for Section 1983 claims as well. We decline to address these arguments here because they (a) were not raised below and (b) are not necessary to decide this appeal.

[8] The dissent is, of course, correct that knowledge of an objectively serious condition is needed for this suit to proceed. But everything in the dissent flows from two errors in its analysis.

The dissent first conflates two potentially serious conditions: chronic prostatitis and prostate cancer. While these conditions share some similar symptoms, the difference between chronic prostatitis and prostate cancer is not one of degree—"the full extent of the injury"—but of kind. *Wallace*, 549 U.S. at 391. As the dissent correctly notes, Mallet's complaint speaks only to cancer because that is the serious condition for which Mallet alleges he received constitutionally inadequate treatment. Mallet was certainly unhappy with his treatment when he believed he had some benign condition or infection that Flomax was not remedying. Whether Mallet could have also plausibly alleged that the Defendants-Appellees were deliberately indifferent in their treatment of Mallet's prostatitis, had he sued earlier, is irrelevant to this case. Instead, Mallet waited and brought *this* suit, alleging that the Defendants-Appellees were deliberately indifferent to his prostate cancer. He could not have brought such a suit until he himself knew or should have known about his prostate cancer. This does not mean "that Mallet's urinary symptoms were not symptoms of cancer," *post* at 19, but it does mean that those symptoms were insufficient to give Mallet, as a layperson, actual or constructive knowledge of his cancer.

The dissent's second mistake is that it assumes that believing that what was known by a medical professional must also have been known by an ordinary person. Mallet has made a plausible argument that the Defendants-Appellees knew of his prostate cancer when he, and a reasonable lay person like him, would not have. The dissent instead repeatedly argues that the Defendants-Appellees cannot possibly be held accountable for knowing about and failing to treat an objectively serious condition if Mallet himself did not know of the condition.

Our court and others have clearly indicated that a condition is objectively serious if a person *informed of the diagnosis* would consider it so. *E.g., Brock*, 315 F.3d at 162 (indicating that, while "[t]here is no settled, precise metric" for a serious condition, one factor is "whether a reasonable *doctor or patient* would perceive the medical need in question as important and worthy of comment or treatment" (emphasis added) (citation omitted)); *Lumbard v. Lillywhite*, 815 F.

Defendants-Appellees suggest that our analysis runs afoul of the accrual

framework articulated in *Wallace v. Kato*. In that case, which concerned a Section

---

App'x 826, 832 (6th Cir. 2020) ("[W]e have looked not to what was obviously detectable to the eye but instead to whether a layman, made aware of an individual's actual medical condition, would consider the condition to be obviously medically serious. . . . [A] plaintiff need not know he is experiencing a serious medical condition for the condition to satisfy the objective component of deliberate indifference." (citations omitted)). And no court that we know of has held the contrary.

Indeed, we are unaware of any court that has held, for example, that the statute of limitations begins immediately for a person who experiences "chronic and substantial pain" and other symptoms, is told by their doctor that these are symptoms of a condition treatable by antibiotics, and finishes the course of antibiotics, only to then learn that their pain was actually a symptom of cancer that their doctor knew or should have known about, at the level of deliberate indifference, all along. Nor do we know of any court that would bar that plaintiff from alleging their doctor's awareness of their cancer simply because they had not recognized their own symptoms as cancer. Yet this would be the result of our adopting the rule urged by the dissent, incorporating these two errors into our caselaw. We decline to do so. None of our sister circuits have adopted the dissent's rule. *See, e.g.*, *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983) (finding that when "the injury alleged by [a plaintiff] is not the bump on his palate but the development of the bump from a controllable medical condition into incurable metastatic cancer," the date of accrual is when the "plaintiff discovered or . . . should have discovered that the failure of his doctors to diagnose, treat, or warn him led to his deteriorating physical condition"); *Devbrow*, 705 F.3d at 769; *Lawson*, 726 F. App'x at 691. And lower courts have taken our reading for granted. *E.g.*, *Waters v. Geo Grp., Inc.*, No. 2:15-CV-00282, 2016 WL 4373717, at *5 (E.D. Va. Aug. 10, 2016) (beginning the statute of limitations, at the latest, when the plaintiff learned that the growth on his neck was malignant rather than when he learned about the growth); *Richards v. Pickett*, No. 5:18-CV-00912, 2018 WL 8731560, at *5 (C.D. Cal. Dec. 13, 2018) (beginning the statute of limitations when the plaintiff learned that his cancer had become terminal, not when he learned of the cancer, because that was the specific harm upon which his complaint was based); *McDonald v. Macabuhay*, No. 2:07-CV-01022, 2009 WL 2432833, at *6 (D. Ariz. Aug. 10, 2009) (rejecting as "circuitous logic" the defendant's argument that his imprisoned patient "had enough information to draw the inference that he was at risk [of harm from his Hepatitis], but . . . the physician treating him did not have enough information to draw that inference").

Everything else in the dissent flows from those two errors. For that reason, we believe that most of the dissent's discussion fails. As to the Defendants-Appellees' purported qualified immunity, the dissent's discussion is based on arguments on which the majority does not rule.

1983 false imprisonment claim, the Supreme Court applied the common law rule that "the tort cause of action accrues . . . when the wrongful act or omission results in damages," even if "the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391 (internal quotation marks omitted).

We disagree that our decision conflicts with this framework. The fact that Mallet's urinary problems were later revealed to be symptoms of a different, serious medical condition does not (merely) demonstrate the "full extent" of his alleged injury; it is an essential element of his claim that Defendants-Appellees were deliberately indifferent to his prostate cancer, without which Mallet could not have alleged this "constitutionally cognizable" injury at all. *Chance*, 143 F.3d at 702; *see also, e.g.*, *Brock*, 315 F.3d at 163; *Collymore*, 74 F.4th at 30-31.

In other words, the moment when Mallet knew or should have known that he possibly had prostate cancer is analogous to the moment when, in *Wallace v. Kato*, Andre Wallace knew or should have known that he had been detained without adequate legal process. By contrast, the moment when Mallet discovered that the prison doctors' (alleged) indifference to his medical needs resulted in a prostatectomy is analogous to the moment when Wallace discovered that the confession he gave during his (allegedly) unlawful detention resulted in a false

murder conviction. The facts in the first pair are themselves needed to establish the fundamental elements of the constitutional injuries alleged, while the facts in the second pair simply go to the "full extent" of the "consequential damages" inflicted by those injuries. *Wallace*, 549 U.S. at 391.

Indeed, and not surprisingly, after *Wallace v. Kato*, several of our sister circuits have also found that an Eighth Amendment deliberate indifference claim does not accrue until the plaintiff knew or should have known that the specific condition that gave rise to his suit was sufficiently serious. *See Vasquez v. Davis*, 882 F.3d 1270, 1276 (10th Cir. 2018) (finding that "[t]he claim accrued once Vasquez knew Defendants' deliberate indifference caused him *substantial harm*, even though the full extent of the injury [wa]s not then known or predictable" (emphasis added) (quoting *Wallace*, 549 U.S. at 391) (internal quotation marks omitted)); *Devbrow*, 705 F.3d at 769 (holding that plaintiff's deliberate indifference claim did not accrue until he learned he had late-stage cancer).

Therefore, our conclusion that Mallet's deliberate indifference claim did not accrue until he either knew or had reason to know the facts which tended to establish one of the essential elements of the claim that gave rise to his suit—that he possibly had cancer, and that this was the serious medical condition that gave

rise to his claim under the Eighth Amendment—is consistent with the framework

articulated in *Wallace v. Kato*.

In *Wallace v. Kato*, of course, there was no factual dispute about when

Wallace knew or should have known that he had been unlawfully detained, so the

Court could resolve the timeliness of his false imprisonment claim as a matter of

law. But in the instant case, the moment at which Mallet knew or should have

known his serious medical condition was possibly cancer is a question of fact that

has not yet been determined and must *at this stage* be read in Mallet's favor.

**C. Plausibility of the Section 1983 Claims**

As an alternative basis for affirming, Defendants-Appellees argue that the

deliberate indifference claim should have been dismissed for failure to state a

plausible claim for relief.[9] They do not, of course, dispute that terminal prostate

cancer is an objectively serious medical condition. Rather, they argue that Mallet's

complaint does not allege sufficient facts to plausibly establish the *subjective*

---

[9] Although the district court did not reach the plausibility arguments below, we "may affirm on any basis for which there is sufficient support in the record, including grounds not relied on by the district court." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 413 (2d Cir. 2014) (quoting *Bruh v. Bessemer Venture Partners III L.P.*, 464 F.3d 202, 205 (2d Cir. 2006)). We will do so in the instant case, in the interest of judicial economy, but only as to those claims for which further consideration by the district court would not be helpful.

component of the deliberate indifference claim, *i.e.*, that Defendants-Appellees consciously disregarded substantial risks to Mallet's health by failing to conduct the appropriate screening tests. In their view, Mallet alleges nothing more than a "mere disagreement over the proper treatment" for his symptoms, which might be enough for a malpractice claim but falls short of an Eighth Amendment violation. *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *accord Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000).

With respect to Dr. Makram and Dr. Stellato, we disagree. According to Mallet's complaint, "officers and nurses would call [him] scum for continuing to ask for medical treatment," "question [Mallet's] repeated sick call requests," and, in fact, told him that "he would only get the minimum treatment the State will allow at the behest of [Dr. Makram]." J. App'x at 13. If we accept, as we must, that these statements were made, and we reasonably infer that the statements were based on prison staff's personal knowledge, then it is certainly plausible that Dr. Makram "consciously cho[se] an easier and less efficacious treatment plan" for Mallet's symptoms—a standard theory of Eighth Amendment deliberate indifference. *Chance*, 143 F.3d at 703 (citing *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)).

Dr. Stellato, for his part, is a urologist. Thus, a reasonable factfinder could infer from the complaint that he had "actual knowledge" of the risk that Mallet might have prostate cancer—given the abnormal cystoscopy results—and, therefore, that his subsequent decision not to conduct a PSA test evinced "deliberate indifference toward that risk." *Chance*, 143 F.3d at 703; *see, e.g.*, *Hart v. Blanchette*, 149 F. App'x 45, 47 (2d Cir. 2005) (reversing summary judgment on a deliberate indifference claim where "the determination of the difference between negligence and deliberate indifference is . . . one for a trier of fact to make."). For these reasons, we hold that the Eighth Amendment claims against Dr. Makram and Dr. Stellato are sufficiently plausible to survive the pleading stage.

As for Professor Ritaccio, however, we hold that Mallet does *not* state a plausible deliberate indifference claim. Even assuming that Professor Ritaccio should be considered a state actor,[10] it cannot be said that he was aware of and "consciously disregarded" the substantial risks to Mallet's health. As Mallet alleges in his complaint, Professor Ritaccio examined him and noted his symptoms of urinary retention and bladder dysfunction. Professor Ritaccio further noted

---

[10] Neither party has addressed this issue.

that, in light of Mallet's symptoms, he was unsure why Mallet was referred to him for "a neuro evaluation." J. App'x at 15. Professor Ritaccio also noted that he is "not a neurologist" and he does not "have a differential for this." *Id.* Despite not being Mallet's primary care provider or a urologist, Professor Ritaccio examined Mallet and made the above-mentioned notes for Dr. Makram to review. Under these circumstances, it is unreasonable to infer that Professor Ritaccio would have immediately recognized the hallmark symptoms of prostate cancer or that he would have been able to recommend an appropriate treatment plan for Mallet. Therefore, we affirm the dismissal of the deliberate indifference claim against Professor Ritaccio on the alternative basis that the complaint failed to state a plausible claim for relief against him.

**D. Sovereign Immunity**

We also affirm the dismissal of all seven Section 1983 claims against the State of New York, DOCCS, and Annucci acting in his official capacity as commissioner of DOCCS, as the Supreme Court has held that Section 1983 does not abrogate sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Horne v. Coughlin*, 191 F.3d 244, 246 (2d Cir. 1999); *see also Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989) ("[A] Section 1983 claim for damages

against a state official can only be asserted against that official in his or her *individual* capacity." (emphasis added)).[11]

**E. The Remaining Claims**

In light of our holdings that Mallet's case is not, as a matter of law, barred by the statute of limitations and that his deliberate indifference claims against Dr. Makram and Dr. Stellato are plausible enough to be reinstated, we also vacate the district court's order declining to exercise supplemental jurisdiction over the common law medical malpractice and negligence claims. Additionally, because the district court did not individually assess the plausibility of the six remaining constitutional claims against Dr. Makram, Dr. Stellato, and Professor Ritaccio, we vacate the dismissal of those claims as well, without expressing any opinion on their plausibility.

---

[11] Defendants-Appellees also argue that Dr. Stellato, Dr. Makram, and Professor Ritaccio are entitled to qualified immunity on the constitutional claims. Given that the district court did not reach this issue, we decline to resolve it here. We thus remand to the district court to evaluate whether these defendants are entitled to qualified immunity, bearing in mind that there does not need to be Second Circuit caselaw explicitly holding that a particular condition is sufficiently serious to find that "[t]he right to be free from such a condition is clearly established." *Collymore*, 74 F.4th at 31 (finding it plausible that the right to be free from deliberate indifference to a scalp condition which caused "chronic and substantial pain" had been clearly established, despite an "absence of precedents involving scalp infection").

In sum, we REVERSE the district court's dismissal of the deliberate indifference claims against Dr. Makram and Dr. Stellato; we AFFIRM the dismissal of the deliberate indifference claim against Professor Ritaccio and the dismissal of all seven constitutional claims against New York State, DOCCS, and Annucci acting in his official capacity; and we VACATE the dismissal of the other six constitutional claims against Dr. Makram, Dr. Stellato, and Professor Ritaccio as well as the dismissal of the state common law medical malpractice and negligence claims against all eight defendants.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court is **AFFIRMED** in part, **REVERSED** in part, and **VACATED** in part, and the case is **REMANDED** for further proceedings consistent with this opinion.

MENASHI, *Circuit Judge*, dissenting:

In today's decision, the court notes that "the gravamen of [Antonio] Mallet's complaint" is that the doctors knew but ignored the fact that Mallet "was exhibiting classic symptoms of prostate cancer." *Ante* at 14-15. Mallet alleges that he "was showing clear objective and visible signs of prostate cancer which were subjectively rejected and ignored by the defendants." J. App'x 12.[1] Mallet seeks relief for the doctors' deliberate indifference to his prostate cancer; in particular, he requests damages for the harm that he suffered from the cancer going untreated. "[I]n September 2017 the cancer was present and would have been caught and treated at a minimal stage,"

---

[1] *See also* J. App'x 13 ("[T]he medical treatment records establish objectively that plaintiff was in fact suffering from clear symptoms of prostate cancer."); *id*. at 15 (alleging that Mallet's symptoms were "clinical signs of prostate cancer"); *id*. at 16 ("Despite the clear signs of prostate cancer, including incomplete emptying, frequency and nocturia, the defendants took no further actions and were deliberately indifferent to plaintiff's medical needs and risk of developing advanced prostate cancer."); *id*. at 23-24 ("The facts show clear deliberate indifference to the plaintiff's medical situation by disregarding the harm of prostate cancer despite clear awareness of the symptoms of same."); *id*. at 24 ("The defendants had clear awareness of the risk of prostate cancer when faced with urinary obstructive symptoms, and such risks should have been obvious or known to defendants."); *id*. at 25 ("The defendants consciously chose an ineffective and easy treatment plan via the prescription of Flomax to help [Mallet] urinate without treating the underlying cancerous and death causing condition that was allowed to expand and metastasize."); *id*. at 26 ("When shown obvious signs of prostate cancer, the defendants deliberately ignored the signs."); *id*. at 26 ("The defendants recklessly chose to ignore the danger posed by [Mallet's] urinary blockage and prostate symptoms, were actually aware that [Mallet] may be suffering from cancer and did not provide basic medical care.").

he alleges. J. App'x 24. The failure to treat the cancer while he was incarcerated "has resulted in advanced and aggressive prostate cancer, a radical prostatectomy and a lessened life expectancy." *Id.* at 25.

The problem for Mallet is that he knew while he was incarcerated that he was suffering from these serious symptoms that the doctors were failing to treat. He nevertheless waited more than three years—the applicable statute of limitations—to bring this lawsuit. To be sure, Mallet had not yet been diagnosed with prostate cancer. But once a plaintiff knows or has reason to know that he has suffered a compensable injury, "[t]he cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (quoting 1 Calvin W. Corman, Limitation of Actions § 7.4.1, at 526-27 (1991)). Today's decision disregards that rule and allows Mallet to delay the accrual of his cause of action to the point at which he "became satisfied that he had been harmed enough." *Id.* That approach wrongly puts the statute of limitations, intended to restrict when a claim may be brought, "in the sole hands of the party seeking relief." *Id.*

The majority evades the normal rule of accrual by insisting—contrary to the allegations of Mallet's complaint—that the symptoms Mallet experienced were "*not* the symptoms of the serious underlying condition—cancer—as to which he is suing." *Ante* at 16 (emphasis added). According to the court, Mallet suffered from not one but "*two* potentially serious conditions." *Ante* at 18 n.8 (emphasis added). Although the complaint alleges that the symptoms reflected an underlying cancer, the court now insists that the symptoms instead reflected "chronic prostatitis"—a diagnosis that appears nowhere in the complaint—and that the difference between prostatitis and cancer "is not one of degree … but of kind." *Id.*

2

The court's differential diagnosis—performed, remarkably, by two appellate judges who have never examined Mallet—provides an explanation for why Mallet might not have known about his underlying condition while he was incarcerated. But it completely undermines Mallet's claims in this case. Mallet's claims depend on the allegation that his urinary symptoms were *symptoms of prostate cancer* and therefore put the doctors on notice that he had prostate cancer. *See supra* note 1. If the symptoms visible to the doctors did not reflect an underlying cancer but a separate condition—prostatitis—that is not the subject of this lawsuit, then the complaint does not plausibly allege that the doctors knew of the risk that Mallet had prostate cancer and consciously decided not to treat him. Under the majority's theory, therefore, Mallet's complaint should be dismissed for failure to state a claim.

Because the district court resolved this case on a motion to dismiss, I would credit the allegations of the complaint that the symptoms Mallet experienced while incarcerated reflected an underlying cancer that could have been treated at that time. While Mallet may not have known in 2017 or 2018 "the full extent of the injury" he would suffer, *Kato*, 549 U.S. at 391, I agree with the district court that the knowledge that he was suffering from a serious medical condition that the doctors inadequately treated was sufficient for his claim to accrue. "[D]elay in discovering the extent and cause of the injury does not prevent a claim from accruing," and "[i]n this case, the injury is failure to treat—not the apparent effects of that failure." *Mallet v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 22-CV-1604, 2022 WL 14092499, at *4 (S.D.N.Y. Oct. 24, 2022). I would affirm the judgment of the district court dismissing the case as barred by the statute of limitations.

3

To avoid doing so, the court decides that Mallet's claim did not accrue until he knew specifically that the condition was cancer. That conclusion conflicts with applicable precedent and with the allegations of the complaint. Accordingly, I dissent.

## I

Mallet alleges that he experienced severe urinary obstructive symptoms for nearly two years while he was incarcerated. These included the inability to urinate, pain while urinating, blood in his urine, and the inability to sleep because of the need to urinate. He complained about his condition to prison doctors, nurses, and corrections officers. The doctors allegedly ignored his symptoms and continued to prescribe the same ineffective medication. Meanwhile, corrections officers and nurses ridiculed him and told him that "he would only get the minimum treatment the State will allow." J. App'x 13. After he was released from prison in January 2019, Mallet sought independent medical treatment and eventually discovered in May 2021 that he was suffering from advanced prostate cancer. In February 2022, he sued the doctors who treated him while he was incarcerated. He claims that the doctors violated his right to be free of cruel and unusual punishments under the Eighth Amendment by exhibiting deliberate indifference to his serious medical condition.

## A

We must decide whether Mallet's suit is timely. To do that, we must determine when his cause of action accrued. The "standard rule" for accrual is that "[a] limitations period commences when the plaintiff has a complete and present cause of action." *Green v. Brennan*, 578 U.S. 547, 554 (2016) (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 418 (2005)). A cause of action becomes "complete and present" when "the

4

plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). In other words, a cause of action accrues "when the plaintiff knows or has reason to know" that "he is suffering from a wrong for which damages may be recovered in a civil action." *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994) (internal quotation marks omitted). The Supreme Court has emphasized that once the plaintiff knows or has reason to know that he has suffered a compensable injury, the cause of action accrues "even though the full extent of the injury is not then known or predictable." *Kato*, 549 U.S. at 391. If it were otherwise, "the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.*

To establish a violation of the Eighth Amendment "arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to his serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (alteration omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two components of a deliberate indifference claim. First, the plaintiff must show that his medical condition is, "in objective terms, 'sufficiently serious.'" *Id.* (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). "Second, the defendant 'must act with a sufficiently culpable state of mind.'" *Id.* (quoting *Hathaway*, 37 F.3d at 66). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Mallet's cause of action therefore accrued when he knew or had reason to know that (1) he was suffering from an objectively serious medical condition, and (2) the defendants knew of and disregarded the risk associated with that medical condition.

**B**

The allegations of Mallet's serious symptoms, his repeated complaints, and the defendants' responses make it obvious that Mallet's cause of action for deliberate indifference accrued while he was incarcerated. Yet Mallet suggests that he did not know—and should not have known—that he was suffering from a serious medical condition during his incarceration. "There was no physical injury to be compensated at that time," he argues, "and without any damages, there was no claim." Appellant's Br. 21.

That is incorrect. We have identified factors that are "highly relevant to the inquiry into whether a given medical condition is a serious one." *Chance*, 143 F.3d at 703. These factors include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 702 (alteration omitted) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)); *accord Collymore v. Krystal Myers, RN*, 74 F.4th 22, 30 (2d Cir. 2023) (noting that a plaintiff might "plausibly allege 'chronic and substantial pain' that is 'important and worthy of comment or treatment,' and which 'significantly affects daily activities.'") (quoting *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)). There is no question that Mallet's urinary condition significantly affected his daily activities; it frequently prevented him from urinating or sleeping. Nor is it in doubt that Mallet's condition caused him chronic pain; he reported that it was painful for him to urinate and that blood appeared in his urine. Both Mallet and his doctors considered his condition to be worthy of comment or treatment; Mallet repeatedly complained about it and the doctors, despite their alleged neglect, still provided treatment and referrals to specialists.

All of the factors we have identified as determinative of whether a medical condition is serious indicate that Mallet's condition was objectively serious.

The court's admission that "Mallet surely knew that he had some kind of persistent medical problem which the Flomax was not addressing"—and that the condition "might qualify as serious"—should end the matter. *Ante* at 15-16. The court recognizes that Mallet "surely" knew that he was suffering from a potentially serious medical condition and that, despite being informed about that suffering, the doctors failed—perhaps intentionally, as Mallet alleges—to treat it. But the court nevertheless insists that "it is not reasonable to infer that he either knew or should have known that he was suffering from *this particular* serious medical condition—cancer—when none of the doctors he saw in prison gave him any indication that his condition was possibly cancer." *Id.* at 15.

In fact, Mallet did not need to know that his underlying condition was cancer for his claim to accrue as long as he knew that his condition was serious and that the doctors knew about it. The seriousness of a medical condition must be assessed "in objective terms," *Chance*, 143 F.3d at 702 (quoting *Hathaway*, 37 F.3d at 66), and as courts have uniformly recognized, a medical condition is objectively serious if an *average layperson* would consider it to be serious.[2] If a patient suffered from an objectively serious condition—

---

[2] *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (citing cases); *see also Mahan v. Plymouth Cnty. House of Corr.*, 64 F.3d 14, 18 (1st Cir. 1995); *Brock*, 315 F.3d at 162; *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *Short v. Hartman*, 87 F.4th 593, 612 (4th Cir. 2023); *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Trozzi v. Lake County*, 29 F.4th 745, 760 (6th Cir. 2022); *Sheldon v. Pezley*, 49 F.3d 1312, 1316 (8th Cir. 1995); *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014); *Riddle*

one that caused chronic pain, interfered significantly with daily activities, or posed a substantial risk to long-term health—his doctor's failure to inform him fully about the seriousness of the condition does not provide evidence that the patient would not have known he was suffering from a serious condition. That failure is instead evidence of the doctor's deliberate indifference to the patient's objectively serious condition. Indeed, Mallet's theory of liability in this case is that the doctors' alleged failure to treat Mallet's condition as cancer demonstrates their deliberate indifference to his serious medical condition. *See supra* note 1.

Other circuit courts have expressly recognized that a claim accrues once the plaintiff is aware that he has a serious medical condition, even if a particular diagnosis occurs later.[3] These courts adhere to the Supreme Court's instruction that "[t]he cause of action accrues even though the full extent of the injury is not then known or

---

*v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996); *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

[3] *See, e.g.*, *Alexis v. Connors*, No. 23-2502, 2024 WL 3534480, at *3 (3d Cir. July 25, 2024) (rejecting a plaintiff's argument that "his Eighth Amendment claim did not accrue until December 8, 2017, when he received his thoracic surgery report" because "the statute of limitations accrues when a party reasonably knew or should have known of the injury, *not* from the time the full extent of the injury becomes known"); *Allen v. Dekalb Cnty. Jail's Med. Providers/Priv. Contractors*, 632 F. App'x 593, 594 (11th Cir. 2016) (rejecting a plaintiff's argument that "the statute of limitations on his claim did not begin to run until August 2014 when he was diagnosed and learned that syphilis had caused permanent eye trauma" because the plaintiff "was aware of his eye injury, and was aware that prison officials did not treat his vision problems after his examination in 2006" and the plaintiff "did not need to be aware of the extent of his injury for the statute of limitations to begin running").

predictable." *Kato*, 549 U.S. at 391. Today's decision rejects that instruction and disagrees with those other courts by allowing Mallet to delay the accrual of his cause of action until the point at which he learned that his condition was not merely serious but was specifically prostate cancer.

The court attempts to mask its disagreement with the Supreme Court and other appellate courts by ignoring the allegations of the complaint and developing its own theory that Mallet suffered from not one but "two potentially serious conditions." *Ante* at 18 n.8. The court diagnoses the first condition as "chronic prostatitis," a disease that Mallet never mentions in his complaint or in his arguments on appeal. *Id.* Neither Mallet nor the court argues that the doctors inadequately treated "Mallet's prostatitis." *Id.* The second condition is prostate cancer, the "serious condition for which Mallet alleges he received constitutionally inadequate treatment." *Id.* The court emphasizes that the urinary symptoms described in the complaint were "not the symptoms of the serious underlying condition— cancer—as to which he is suing." *Id.* at 16. As the court reads the complaint, therefore, Mallet complained about symptoms of prostatitis and the doctors treated that condition. But, at the same time, Mallet may have had the separate condition of cancer that was unrelated to his urinary symptoms and that allegedly went untreated.

The court's distinction between prostatitis and cancer fatally undermines the theory of liability in the complaint, according to which the urinary symptoms were "signs of prostate cancer" that the doctors should have recognized, J. App'x 16, rather than a different condition requiring a separate course of treatment. If these were two distinct conditions—and the doctors adequately treated the prostatitis that was evident but did not treat the separate unseen cancer—then there would no longer be a factual basis for concluding

9

that the doctors were aware of an underlying cancer that they were failing to treat. That means Mallet has failed to state a claim for deliberate indifference.

The court wants Mallet to have it both ways: there were two conditions for the purpose of accrual, but with respect to the merits of his deliberate indifference claim there was only one condition that developed into cancer. But that is not possible. When the "pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Pierce v. Fordham Univ.*, No. 15-CV-4589, 2016 WL 3093994, at *2 (S.D.N.Y. June 1, 2016) (quoting *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-CV-1777, 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011)), *aff'd*, 692 F. App'x 644 (2d Cir. 2017). That is because "[c]ontradictory allegations are not plausible." *De Ford v. Koutoulas*, No. 22-CV-652, 2024 WL 1346942, at *12 (M.D. Fla. Mar. 29, 2024).[4]

The "one condition" theory described in the complaint fails to state a claim because it cannot overcome the statute of limitations. The "two conditions" theory described in the court's opinion fails to state a claim because it would mean that Mallet has not plausibly alleged that the prison doctors knew of and consciously disregarded the risk of cancer. Either way, the complaint was properly dismissed.

---

[4] *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming the dismissal of claims based on "conclusory and inconsistent allegations"); *Savitsky v. Mazzella*, 210 F. App'x 71, 72 (2d Cir. 2006) (concluding that "it would have been futile" to permit leave to amend because the "allegations were either conclusory or contradictory").

10

## C

Even taken on its own terms, the court's theory makes little sense. "[A]lthough Mallet surely knew that he had some kind of persistent medical problem which the Flomax was not addressing," the court explains, "it is not reasonable to infer that he either knew or should have known that he was suffering from *this particular* serious medical condition—cancer—when none of the doctors he saw in prison gave him any indication that his condition was possibly cancer." *Ante* at 15. According to the court, the persistent medical problem that the Flomax sought to address was *not* cancer but prostatitis—a condition that reflects a "difference … of kind" from the cancer he would later develop. *Id.* at 18 n.8. So it is not clear why the doctors would have been expected to inform Mallet that this separate condition "was possibly cancer" when the court believes it was not.

Regardless, given the allegations of the complaint, it is implausible that Mallet relied on the doctors' assessment of his condition (or conditions). Mallet alleges that nurses and corrections officers told him that "he should not expect good treatment in prison," that "not everyone makes it out alive," and that "he would only get the minimum treatment the State will allow." J. App'x 13. Mallet was so concerned about his medical treatment in prison that he had his attorney write to the commissioner of the DOCCS to express "concerns with the Health Services staff at Woodbourne Correctional Facility." *Id.* at 70. It is not possible to infer from these allegations that Mallet trusted the assessment of the prison medical staff.

If a reasonable patient could have believed—based on the doctors' alleged silence about the possibility of cancer—that Mallet's condition was not sufficiently serious for a lawsuit, then it would

11

follow that the condition was *not* objectively serious and the doctors were not deliberately indifferent. "A medical need is serious … if the *average person* would surely deem it to be one that required professional treatment." *Trozzi*, 29 F.4th at 760 (emphasis added) (alteration omitted) (quoting *Gunther v. Castineta*, 561 F. App'x 497, 500 (6th Cir. 2014)); *accord Short*, 87 F.4th at 612 (explaining that a medical condition qualifies as "objectively serious" when "even a lay person would easily recognize the necessity for a doctor's attention") (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). The allegations in this case describe symptoms—chronic pain, inability to urinate, nocturia, blood in one's urine—that an average person would consider serious enough to require treatment. If the average person could believe that these symptoms did not reflect a serious condition that required additional treatment—or if, as the court would have it, these symptoms related to a separate condition that Mallet does not allege was inadequately treated—then there was no objectively serious condition during Mallet's incarceration that could form the basis of a deliberate indifference claim.

The court wants to rely on the doctors' responses to Mallet's condition for two contradictory purposes: both to provide evidence that the seriousness of Mallet's condition was hidden from him and also to provide evidence of the doctors' deliberate indifference to Mallet's objectively serious condition. *See ante* at 15-16. To do so, the court reaches back more than half a century to an old malpractice case in which our court said there was no clear error in the determination of the district court that the plaintiff's claim had not accrued while he was "[g]iving full faith to his doctor's confident prognosis" that he "needn't worry" about his persistent "acute discomfort." *Toal v. United States*, 438 F.2d 222, 225 (2d Cir. 1971). In the court's view,

12

Mallet similarly relied on his doctors' silence about whether his admittedly serious condition could involve cancer.

Put aside for the moment the obvious distinction between a "confident prognosis" that there was nothing to worry about, on the one hand, and mere silence regarding the possible scope of a clearly serious condition that required treatment, on the other. As the court acknowledges, the Supreme Court has said that the reasoning of *Toal* was wrong. In *United States v. Kubrick*, the Supreme Court explained that the plaintiff's medical malpractice claim accrued when a reasonable person in the plaintiff's position would have "made inquiry among doctors with average training and experience in such matters" and "discovered that he probably had a good cause of action." 444 U.S. 111, 123 (1979). The court nevertheless announces that it will adopt "*Toal*'s accrual standard in the context of Eighth Amendment claims" because "unlike the plaintiff in *Kubrick*, an incarcerated person is not necessarily able to make her or his own independent inquiries about the quality of care she or he receives in prison." *Ante* at 15 n.4.

Even if that were a viable distinction, it simply would not apply in this case. Mallet was transferred from Woodbourne to Queensboro Correctional Facility for the last four months of his incarceration and there was examined by a Dr. Williams, who "read his prior medical records and charts" and told him that "hopefully [he would] get better treatment" after his release. J. App'x 17. Thus, Mallet *did* consult a doctor who was independent of Drs. Makram and Stellato, and he alleges that the independent doctor told him that the treatment of the other doctors had been inadequate. Even under the court's novel accrual standard—based on a 1971 malpractice case that no longer governs malpractice cases but that the court now adopts for Eighth Amendment cases—Mallet's deliberate indifference claim

13

against Makram and Stellato would have accrued at the latest when he consulted an independent physician at Queensboro. That was still three years before he filed this lawsuit.

## D

Despite its acrobatics, today's opinion still cannot tell us when Mallet's claim accrued. The court rejects the approach of two other circuits that would put the accrual date at the time of the cancer diagnosis. *See ante* at 17 n.6 (disagreeing with *Devbrow v. Kalu*, 705 F.3d 765 (7th Cir. 2013), and *Lawson v. Okmulgee Cnty. Crim. Just. Auth.*, 726 F. App'x 685 (10th Cir. 2018)). In doing so, the court (correctly) decides that Mallet did not need to receive a formal diagnosis for his claim to accrue. But the court also (incorrectly) decides that it was not enough for Mallet to know that he was suffering from chronic and painful symptoms to which the prison doctors allegedly responded with indifference or contempt. In light of these decisions, the court can say only that Mallet's cause of action accrued "at some point" between these moments, and to identify that point the district court must scrutinize not the objective features of Mallet's condition but "what exactly Mallet's post-release providers told him and when they told him." *Id.* at 17-18. So perhaps a jury will need to decide how alarmed Mallet should have been when (1) he was referred to a urologist in July 2019, (2) a test showed an elevated PSA level in August 2020, (3) a test showed a reduced PSA level in October 2020, (4) a test showed an increased PSA level again in February 2021, or (5) a biopsy was ordered in April 2021. *See* J. App'x 17-18.

The court speculates that perhaps "Mallet neither knew nor should have known that his condition was not only serious but potentially cancer until, say, August 2020, when the first PSA test was administered." *Ante* at 17. At that time, after he "was prescribed a new

14

medication to shrink his prostate," Mallet "was presumably put on notice that he had this specific serious medical condition related to his prostate issues." *Id.* at 16-17. But there is no principled reason to conclude that Mallet's claim accrued with the PSA test in August 2020 rather than, say, with the cystoscopy in September 2017. The cystoscopy revealed "urinary retention, urinary obstructive symptoms and mild congestion of the prostatic lobe, posterior urethra and bladder neck, [and] bladder trabeculation +1." J. App'x 14. Mallet alleges that these were unmistakable signs of prostate cancer. *See id.* Why was the PSA test sufficiently serious when the cystoscopy was not? Perhaps the seriousness of these signals depends on the court's distinction between prostatitis and prostate cancer; because the complaint does not allege such a distinction, however, there is no reason to expect that the evidence will support it.

Of course, I agree with the court on how to articulate the standard. Mallet's claim accrued when he "knew or had reason to know" two facts: "that he suffered from an objectively serious medical condition" and "that Defendants-Appellees failed to provide adequate treatment because they consciously disregarded a substantial risk to his health and safety." *Ante* at 13. Taking the allegations of the complaint as true, these requirements were met while he was incarcerated. Because that was "more than three years before he commenced this lawsuit," the district court correctly concluded that "the Section 1983 claims must be dismissed" as time-barred by the statute of limitations. *Mallet*, 2022 WL 14092499, at *5 (capitalization omitted).

## II

If the court were correct that Mallet did not know—and should not have known—that he was suffering from the relevant serious

15

medical condition while he was incarcerated, his claim still could not proceed. The seriousness of a medical condition must be assessed "in objective terms." *Chance*, 143 F.3d at 702; *see also Trozzi*, 29 F.4th at 760; *Short*, 87 F.4th at 612; *Gutierrez*, 111 F.3d at 1373. The court accepts the indisputable fact that Mallet knew he had a "persistent medical problem" that "might qualify as serious" while he was incarcerated. *Ante* at 15-16. That condition might have been a proper basis for a deliberate indifference claim had Mallet filed suit within the statute of limitations. Mallet complained "repeated[ly]" about his "urinary obstructive symptoms" and "continu[ed] to ask for medical treatment" despite being discouraged and ridiculed by prison staff. J. App'x 13.

But the court insists that this serious medical condition was not "the serious condition for which Mallet alleges he received constitutionally inadequate treatment." *Ante* at 18 n.8. "[T]he difference between" the two conditions, according to the court, "is not one of degree … but of kind." *Id.* Mallet's urinary symptoms did not indicate the presence of cancer because those symptoms were "not the symptoms of the serious underlying condition—cancer—as to which he is suing." *Id.* at 16. If the court's account is accurate, then the doctors cannot be liable for deliberate indifference. To state a deliberate indifference claim, Mallet must plausibly allege that the doctors knew of a serious risk to his health and consciously disregarded that risk.

If the symptoms that they treated were not symptoms of cancer, then the doctors could not have known of the risk that Mallet had cancer. Perhaps it would have been a better practice to conduct a PSA test to be sure. The failure to conduct such a test, however, establishes at most that the doctors were negligent or committed malpractice. The Supreme Court has emphasized repeatedly that mere negligence or

16

malpractice does not amount to deliberate indifference. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference entails something more than mere negligence."); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. … It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). Unless the urinary symptoms of which Mallet complained indicated that he had cancer—a proposition that the court has now rejected—nothing in Mallet's complaint suggests that the doctors "act[ed] with a sufficiently culpable state of mind" to support a deliberate indifference claim rather than that they simply failed to check for a possibility they should have explored given their medical training. *Chance*, 143 F.3d at 702 (quoting *Hathaway*, 37 F.3d at 66).

The Supreme Court has rejected the proposition that an official is deliberately indifferent if he "acts or … fails to act in the face of an unjustifiably high risk of harm that is either known *or so obvious that it should be known.*" *Farmer*, 511 U.S. at 836 (emphasis added). Instead, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*" *Id.* at 837 (emphasis added).[5] "[A]n

---

[5] The requirement that the official actually infer the risk of serious harm distinguishes deliberate indifference, which resembles recklessness in the criminal-law context, from mere negligence. *See Farmer*, 511 U.S. at 836-37

17

official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment" in violation of the Eighth Amendment. *Farmer*, 511 U.S. at 838. In spite of this case law, the court reasons that it should have been obvious to the doctors that Mallet was exhibiting signs of prostate cancer and needed a PSA test—despite the fact that the court itself concludes that the urinary symptoms of which he complained were not signs of prostate cancer. Without factual material in the complaint to suggest that the doctors *actually realized* that Mallet faced a substantial risk of prostate cancer, Mallet's deliberate indifference claim cannot proceed.

The court relies on a summary order that concluded that a particular evidentiary record was "sufficient to avoid summary judgment." *Hart v. Blanchette*, 149 F. App'x 45, 47 (2d Cir. 2005). The order explained that "the determination of the difference between negligence and deliberate indifference is, *in the circumstances of this case*, one for a trier of fact to make." *Id.* (emphasis added). The court omits the emphasized portion of that passage, *see ante* at 24, and by doing so elides the principle that the determination is not *always* for the trier of fact. Before such a question proceeds past a motion to dismiss, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the complaint "pleads facts that are merely consistent with a

("[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk. … The criminal law, however, generally permits a finding of recklessness only when a person disregards a risk of harm *of which he is aware*.") (emphasis added).

18

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

Given the court's conclusion that Mallet's outward symptoms were unrelated to cancer, Mallet offers no factual allegations that support the inference that the doctors—especially Stellato, who treated Mallet only once, in September 2017—were deliberately indifferent rather than merely negligent. Because "the post hoc medical assessments of judges cannot compensate for a plaintiff's failure to plead facts sufficient to evince a conscious disregard of a substantial risk of serious harm," *Darby v. Greenman*, 14 F.4th 124, 129 n.3 (2d Cir. 2021) (internal quotation marks and alteration omitted), if the court is correct that the claim accrued on the basis of the underlying cancer rather than the outward symptoms of prostatitis, then Mallet fails to state a claim for deliberate indifference.

On remand, Mallet will need to identify evidence that the doctors actually knew of the risk that he had cancer and consciously decided not to treat it. Because the court has now decided that Mallet's urinary symptoms were not symptoms of cancer,[6] it seems unlikely that he can make that showing.

### III

In any event, the defendants are entitled to qualified immunity in this case. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not

---

[6] *See United States v. Tenzer*, 213 F.3d 34, 40 (2d Cir. 2000) ("When an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue.") (quoting *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977)); *see also United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).

violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The Supreme Court has instructed us that "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft*, 563 U.S. at 742).

When the defendants treated Mallet, it was not clearly established that a doctor could be deliberately indifferent if he adequately treated the outward manifestations of one medical condition and yet failed to identify a second condition that was not responsible for the symptoms and of which the patient was not—and should not have been—aware. It was not clearly established that negligently failing to order a PSA test for a patient being treated for the separate condition of prostatitis violated the Eighth Amendment. Because the liability of the defendants in this case depends on these newly announced principles, qualified immunity prevents the retroactive application of the principles to impose liability here.

\* \* \*

The court concludes that Mallet's lawsuit was timely filed because even though he knew that he suffered from a serious medical condition while incarcerated, he did not know that the specific condition was prostate cancer. That conclusion contradicts the established principle that once a plaintiff knows or has reason to know that he has suffered a compensable injury, "[t]he cause of action accrues even though the full extent of the injury is not then known or predictable." *Kato*, 549 U.S. at 391. And it relies on an internally

20

contradictory reading of the complaint according to which the prison doctors' statements can simultaneously reflect deliberate indifference to an objectively serious condition and also indicate that Mallet had no reason to know that he was suffering from that serious condition.

I would instead credit the allegations of the complaint that Mallet's urinary symptoms reflected the underlying condition of cancer. Because Mallet knew he was suffering from those symptoms more than three years before he filed this lawsuit, I agree with the district court that the statute of limitations requires dismissal of Mallet's suit. But if, despite its confusion, today's opinion might have now established the novel principles on which it relies, those principles surely were not clearly established when Mallet received treatment from the defendants. And that would entitle the defendants to qualified immunity and require us to affirm the judgment of the district court. Accordingly, I dissent.